**HOMOVICH v. CHAPMAN, Secretary of the Interior, et al.**

**No. 10778.**

United States Court of Appeals District of Columbia Circuit.

Argued March 15, 1951.

Decided June 21, 1951.

William S. Hamilton, of the Bar of the Supreme Court of Oklahoma, Pawhuska, Okl., pro hac vice, by special leave of Court, and Joseph J. Smith, Jr., Washington, D. C., with whom O. R. McGuire, Jr., Washington, D. C., was on the brief, for appellant.

Houston Bus Hill, of the Bar of the Supreme Court of Oklahoma, Oklahoma City, Okl., pro hac vice, by special leave of Court, with whom William E. Leahy and William J. Hughes, Jr., Washington, D. C., were on the brief, for appellees George Homovich, Maude Homovich Red Elk, Bessie Homovich, and Wook-Kah-Nah.

Fred W. Smith, Atty., Department of Justice, Washington, D. C., with whom Asst. Atty. Gen. A. Devitt Vanech and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., were on the brief, for appellee Chapman.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Herbert Homovich was a Comanche Indian. He owned trust and restricted property appraised at some $162,000. On June 4, 1947, he went to an office of the United States Indian Service to make a will. An employee of that Service assisted him. He used a printed form prepared and published by the Department of the Interior for that purpose.[1] He left the property to various collateral relatives and stated that the reason for omitting his mother, two sisters, and a brother was "that they are cared for financially from other sources." The will was duly signed and witnessed. On April 10, 1948, he married the present appellant, Neoma Homovich. On September 30, 1948, without changing or revoking his will, he died without issue. His sole and only heirs at law were his mother and appellant. On April 6, 1949, after a hearing and compliance otherwise with applicable Departmental regulations, the Secretary of the Interi-

or, acting through his duly authorized representatives, approved the will and ordered that distribution of the estate be made in accordance therewith.

The present appellant thereupon brought an action in the United States District Court for the District of Columbia, asking that the Secretary's order be set aside. Both parties and intervenors filed motions for summary judgment. The court granted the motions of the Secretary and the interveners and rendered judgment dismissing the complaint. The plaintiff wife appealed. She urges (1) that the will was null and void when it was executed; (2) that the Secretary's approval did not make the will valid; (3) that if valid the will was revoked by operation of Oklahoma law; and (4) that, if valid and not revoked by Oklahoma law, it was revoked by the marriage, an act which, she says, clearly evidenced an intention to cancel the will.

Prior to 1910 Indians of this tribe had no right to dispose of trust and restricted property by will. An Act of June 25, 1910, amended February 14, 1913,[2] provided in part that these Indians have the right to dispose of such property by will "in accordance with regulations to be prescribed by the Secretary of the Interior: *Provided, however,* That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: *Provided, further,* That the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator * * * *"[3]

Appellant says that at the time of the execution of this will there were no existing regulations of the Secretary prescribing the manner in which such wills should be executed, and that, therefore, the will was invalid.

From time to time after 1910, the Secretary promulgated regulations concerning wills of these Indians. In 1935 he promulgated "Regulations Relating to the Deter-

---

1. Form 5-109, February, 1939.
2. 36 Stat. 856, 37 Stat. 678, 25 U.S.C.A. § 373.

3. This Act did not apply to the Five Civilized Tribes or to the Osage Indians.

mination of Heirs and Approval of Wills Except Members of the Five Civilized Tribes and Osage Indians." In those Regulations he dealt with the form and execution of wills as part of the provisions for his approval of them. In one of the ten sections which related to "Approval of Wills", the Regulations contained this sentence: "When the will is prepared by the superintendent or examiner of inheritance or other employee of the Indian Service it shall be prepared on the printed form furnished by the Indian Office."

On May 29, 1947, a few days before Homovich executed his will, the Secretary promulgated a new set of Regulations, entitled exactly as were the old ones. The old Regulations were revoked, and new sections were substituted therefor. The new Regulations provided for hearings before examiners of inheritance and for decisions by the examiners on both the determination of heirs and the approval of wills. They did not include provisions similar to those which had been in the old Regulations relating to the form and · execution of wills. Some six weeks later, on July 14, 1947, the Commissioner of Indian Affairs circulated to all examiners of inheritance and superintendents detailed instructions prescribing the procedure to be followed in carrying out the Act and the Regulations. That circular contained detailed provisions, practically identical with those which had been in the old Regulations, relating to the form and execution of wills. The record shows that these provisions were put in the supplemental circular because the Solicitor for the Department thought that the original draft of the new Regulations, which had contained those provisions, was too detailed and too voluminous. He accordingly prepared a revised draft, omitting the details and suggesting that they be incorporated in instructions to be issued by the Commissioner.

Appellant's contention is that, since there were, on the day when Homovich executed his will, no existing "regulations" prescribing the form and execution of wills, the will was invalid. That contention cannot be sustained. This will was approved by the Secretary, and the proceeding for its approval was in accord with the regulations which existed at the time of its execution. The will was on a form prepared and published by the Department. The statute does not require that the Secretary prescribe by regulations the precise form and manner of execution of wills; the heart of the statutory provision is the approval of the Secretary. There were regulations; the contention is merely that they did not prescribe the acceptable form and execution of these wills. Such an omission cannot invalidate all wills even though approved by the Secretary. Since 1910 there has been no break in the continuity of the Departmental requirements and procedure in respect to these wills. Appellant's contention, if sustained, would mean that because the Secretary omitted these details from the new Regulations of 1947 all wills of Indians executed since that time have been invalid. The statute, which was designed to confer rights on the Indians, cannot be so narrowly construed.

Appellant's next contention is that the will, being invalid when it was executed, was not made valid by the Secretary's approval. We have already indicated that we are of opinion that the will was not invalid when executed. Moreover, the nature of the invalidity claimed by the appellant must be noted in this connection. This will was, as the Secretary says, probably valid as a will in any jurisdiction in this country. Admittedly the testator was of sound mind. No fraud or improper influence was involved. The will is perfectly clear on its face and was duly signed and published by the testator in the presence of two witnesses who signed in his presence and in the presence of each other. The question, therefore, is not whether the Secretary could by approval make valid a will which was invalid. The question is merely whether the Secretary could approve a will when he had not theretofore prescribed with precision by regulation the form of a will which he would approve. We think he could.

Appellant's next contention is that the will was revoked by the law of Oklahoma when the marriage of the testator ·

occurred. The contrary is established by the cases. State law has no application to the validity of the wills of Indians disposing of restricted and trust property.[4]

■ Appellant's last contention is that the testator's marriage establishes an intent on his part to revoke the will. We are not shown any decision of the Secretary, either in the form of a regulation or in the disposition of a specific case, in which he has held that marriage revokes a previously executed will of an Indian. It was an obvious intent of Congress to place the approval of Indian wills in the hands of the Secretary for their protection. It is not for the courts to impose upon him a rigid rule of law in this respect. The rule prevalent in many, if not most, of the states is not binding upon him.

■ The Secretary maintains that his action in respect to the wills of Indians is not reviewable by the courts. But the actions of Secretaries in respect to these wills have been reviewed by the courts,[5] and no case to the contrary is cited to us. Such review is not precluded by the statute. The Secretary argues that, because Section 1 of the 1910 Act, dealing with the determination of the heirs of an Indian who dies without a will, provides that his determination "shall be final and conclusive", therefore Section 2 of that Act, dealing with wills, must be read as though it contained a similar provision, although in fact it does not. We think it plain that, if Congress had meant that the decisions in Section 2 should be final and conclusive, it would have said so; in the immediately preceding paragraph it had so provided when it meant to do so. The mere fact that the acts of the Secretary in providing regulations for the execution of these wills and in approving them, required the exercise of discretion and judgment on his part, does not preclude judicial review of his action. To be sure, if upon such review it appears that his action was within the scope of the authority conferred upon him, the court cannot disturb his decision. But that is a different rule from the rule of total non-reviewability. The Administrative Procedure Act (Section 10)[6] forbids judicial review only where statutes "preclude" such review or where agency action is "by law committed to agency discretion." No statute "precludes" this review, and the Secretary would have us stretch the second prohibitory clause far beyond its meaning. He says that there can be no review where agency action "involves" discretion or judgment. Obviously the statute does not mean that; almost every agency action "involves" an element of discretion or judgment. Whether the court should set aside an agency action founded upon the exercise of discretion and judgment is, as we have said, a totally different question from whether the court may review the action for purposes of determining its validity.

The judgment of the District Court must be and is hereby

Affirmed.

4. Blundell v. Wallace, 1925, 267 U.S. 373, 45 S.Ct. 247, 69 L.Ed. 664; Blanset v. Cardin, 1921, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950; Hanson v. Hoffman, 10 Cir., 1940, 113 F.2d 780.

5. See cases cited note 4 supra; also Nimrod v. Jandron, 1928, 58 App.D.C. 38, 24 F.2d 613.

6. 60 Stat. 243 (1946), 5 U.S.C.A. § 1009. See discussion in Kristensen v. McGrath, 1949, 86 U.S.App.D.C. 48, 179 F.2d 796 (not discussed by Supreme Court, McGrath v. Kristensen, 1950, 340 U.S. 162, 169, 71 S.Ct. 224, 95 L.Ed. 173; also in Air Line Dispatchers Ass'n, et al. v. National Mediation Board, et al.1951, 89 U.S.App.D.C., ——, 189 F.2d 685, and also in Capital Transit Company v. United States, 1951, D.C., 97 F.Supp. 614.