**Joe HAYES, Appellant,**

v.

**Fred A. SEATON, Secretary of the Interior, Appellee.**

**No. 14813.**

United States Court of Appeals District of Columbia Circuit.

Argued March 18, 1959.

Decided July 9, 1959.

Petition for Rehearing en Banc Denied Oct. 5, 1959.

---

Burger, Circuit Judge, dissented.

Mr. Leon BenEzra, Washington, D. C., for appellant.

Mr. Robert S. Griswold, Jr., Attorney, Department of Justice, with whom Mr. Roger P. Marquis, Attorney, Department of Justice, was on the brief, for appellee.

Before EDGERTON, DANAHER, and BURGER, Circuit Judges.

EDGERTON, Circuit Judge.

Section 1 of the Act of June 25, 1910, 36 Stat. 855, as amended, 25 U.S. C.A. § 372, provides in part:

"When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive. * * *"

Joseph Thomas, an Indian, disappeared August 3, 1939, and has not been heard from since. His father John Thomas, an Indian, died September 22, 1940, leaving a will made in 1923. After disposing of clothes, the will said: "all other property of any nature belonging to me or in which I have any interest to my son Joe Thomas." The Secretary of the Interior decided that the son survived the father and took his estate, and that Emma J. Luton, as the son's heir, took both estates.

If the son did *not* survive the father, (1) the father's devise to the son lapsed; (2) the father, not Emma Luton, was the son's heir; and (3) appellant Hayes, as the father's heir, took both estates.

Appellant Hayes asks review and reversal of the Secretary's decision that the son survived the father and Luton is the heir.

Since the Secretary's decision that the son survived the father was an essential part of the Secretary's "final and conclusive" ascertainment of the son's legal heirs, it was a final and conclusive decision. It determined who took the son's property and also who took the father's property. We think it was final and conclusive for both these purposes. Even if it were reviewable and in our opinion erroneous, we could not disturb it, for it was not arbitrary or unreasonable. " 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' " Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147.

We see no basis for appellant's reliance on § 2 of the 1910 Act, 25 U.S. C.A. § 373. It provides (1) that the Secretary may prescribe regulations in accordance with which Indians may make wills disposing of trust property, and (2) that "no will so executed shall be valid * * * until it shall have been approved by the Secretary * * *." As we held in Homovich v. Chapman, 89 U.S. App.D.C. 150, 153, 191 F.2d 761, 764, this section does not prevent judicial review of the Secretary's action in making regulations for executing wills or in approving wills. But even in regard to such matters, we said: "To be sure, if upon such review it appears that [the Secretary's] action was within the scope of the authority conferred upon him, the court cannot disturb his decision." Moreover, the present case does not turn on such matters. It is undisputed that the Secretary's regulations for making wills were valid, that the will of John Thomas was validly executed, and that the will was approved by the Secretary. The appellant attacks only the Secretary's decision that the son survived the father, and its consequences. As we have shown in the preceding paragraph of this opinion, we cannot disturb that decision.

We think the District Court was right in dismissing appellant's complaint.

Affirmed.

BURGER, Circuit Judge (dissenting).

The resolution of this case turns on the factual issue as to whether John, the father, or Joseph, the son, died first. If the father died first, his property passed to his son Joseph under his will. If the son died first, the father inherited his son's property by intestate succession. The heir-at-law of the last survivor of the two is now entitled to both estates. The heirs of the two estates were the opposing litigants before the Examiner of Inheritance.

### I—Jurisdiction

Although only one question is disputed, it must be constantly kept in mind that two separate estates are involved. Since the father died leaving a valid will, Section 2 of the 1910 Act, 36 Stat. 856, as amended, 25 U.S.C.A. § 373, controls the disposition of his estate. The son died intestate, hence Section 1, 36 Stat. 855, as amended, 25 U.S.C.A. § 372, controls his estate.

Yet the majority "see no basis for appellant's reliance" on Section 2. As I shall try to develop below, it might quite as well be said that there was no basis for the Secretary's reliance on Section 1. I believe the correct analysis is that both sections have equal bearing. I see no reason why the answer to the underlying question must first be given with respect to the Section 1 estate and then merely adopted without analysis for purposes of the Section 2 estate.

This, however, is exactly what the Secretary's Examiner did and the majority now adopt his arbitrary position and make it conclusive and therefore unreviewable. On June 20, 1956, the Portland, Oregon, Examiner of Inheritance entered an order in the matter of the son's estate, reciting:

"Joseph Thomas [the son] is hereby presumed to have died intestate, and the date of his death is deter-

mined to have been on August 3, 1946, at the age of 35 years." [1]

All of the foundation for this determination was recited in the order and it is as follows:

"The evidence taken at the hearings * * * indicates that diligent search has been made for the above named person [the son, Joseph Thomas] by interested and other parties without avail. The records show that the party had little regard for his relatives and had no local attachments of any kind and was in the habit of leaving home for considerable periods of time without notifying anyone of his whereabouts. Further, there is no evidence of any castastrophe involved in which Joseph Thomas may have perished at the time of his disappearance."

On the same day this order was entered, the Examiner of Inheritance entered another order approving the father's will and determining the "heir of subsequently deceased devisee [the son]," reciting:

"A decree has been issued this date in the estate of Joseph Thomas, *presuming* him to have died on August 3, 1946, at the age of 35 years, which was 7 years from the time of his disappearance. The reasons for this are *fully* set forth in the Order in that case." (Emphasis added.)

In other words, the Examiner made a finding with respect to the son's Section 1 estate, and then in disposing of the father's Section 2 estate, merely adopted this finding without further consideration. Nevertheless, it is clear that a finding as to the date of the son's death is essential to the disposition of *both* estates. That this finding was arbitrarily borrowed by the Examiner when he made his determination as to the Section 2 estate has no bearing on whether the court can or cannot review that determination. If the statute permits any judicial review of a Section 2 determination, as we held it did in Homovich v. Chapman,

1951, 89 U.S.App.D.C. 150, 191 F.2d 761, that review is not foreclosed by the fact that the particular finding which a party attacks was adopted from another and perhaps unreviewable proceeding.

Nor do I agree with the majority when they say that Section 2 has no relevance because it merely gives the Secretary authority to "approve" Indian wills. The Examiner determined who should inherit the property of John Thomas under his will. The authority to make such a determination must be found in Section 2 or else it does not exist. Section 1 does not give the Secretary any such authority: it deals only with intestate property. Section 2, which conferred upon John Thomas the right to devise property in accordance with the Secretary's regulations, thereby implicitly gave the Secretary authority to resolve the present dispute which arises from an exercise of that statutory right. This authority has been exercised in this case, and seems to me subject to judicial review under Homovich v. Chapman, supra.

To summarize, the fact that the District Court may perhaps not have power to review the Secretary's Section 1 decision concerning the son's estate alone is irrelevant insofar as a Section 2 decision is concerned, and all judicial review should not be foreclosed simply because the dispositive finding is present in both decisions below. The Secretary argues that this may lead to "the absurd result of contradictory findings of the same fact." This argument is not convincing because, if the court should reverse one of the Secretary's determinations while not passing on the other, it has not thus prevented the Secretary himself from subsequently reviewing that decision which has been left untouched by the court. The problem of "contradictory findings" is within his power to correct. Absent a clear legislative expression making unreviewable an administrative action of this character, courts should be reluctant to find lack of jurisdiction. See Monongahela Bridge Co. v. United

---

1. All parties agree that the father died on September 22, 1940, and that the son disappeared on August 3, 1939.

States, 1910, 216 U.S. 177, 195, 30 S.Ct. 356, 361, 54 L.Ed. 435;[2] The King v. Plowright, 3 Mod. 94, 87 Eng.Rep. 60 (K.B.1686); 4 Davis, Administrative Law Treatise ch. 28 (1958).

Professor Jaffe has stated the general principle thusly: "[I]n our system of remedies, an individual whose interest is acutely and immediately affected by an administrative action presumptively has a right to secure at some point a judicial determination of its validity." Jaffe, The Right to Judicial Review, 71 Harv.L.Rev. 401, 420 (1958). Here the majority has completely and finally foreclosed all judicial review of an administrative determination that appellant is not entitled to inherit the estate of John Thomas (valued at $63,811.09). They have done this solely because a statute which has no application to the John Thomas estate prevents, so they hold, judicial review of the determination that appellant is not entitled to inherit the estate of Joseph Thomas (valued at $6,259.53). This then becomes a case where the majority permits a $6,000 tail to wag a $63,000 dog. The majority has certainly ignored the presumption of reviewability if they have not indeed adopted a presumption of unreviewability.

My disagreement with the majority concerning jurisdiction to review requires me to analyze issues which they did not reach. As I see it, there are two further issues: (1) what is the scope of review and (2) within this scope was the District Court correct in granting summary judgment to the Secretary?

## II—Scope of Review

As the majority point out, we said in Homovich v. Chapman, supra: "To be sure, if upon such review it appears that

[the Secretary's] action was within the scope of the authority conferred upon him, the court cannot disturb his decision." The majority fail to note, however, that the Homovich opinion proceeds to hold that Section 10 of the Administrative Procedure Act[3] governs review of action taken by the Secretary under the authority of Section 2 of the 1910 Act.

Section 10(e) of the A.P.A. lays down broad general guides for the scope of review. These guides only infrequently answer specific problems as posed by actual cases. As Professor Davis has put it, "the degree of intensity of review is not necessarily susceptible of embodiment in a word formula."[4] Yet we do find guides consistent with Section 10(e) of the A.P.A. in a phrase that runs through the cases: an administrative decision should be upheld unless it is not supported by substantial evidence on the record considered as a whole. See Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.[5] Homovich v. Chapman certainly did not intend to deviate from these established general formulas. If anything, the spirit as distinguished from the letter of that case tends to a broadening of the scope of review. This is clearly indicated by the court's holding there that Section 10 of the A.P.A. is applicable to cases arising under Section 2 of the 1910 Act.

## III—Correctness of Decision

Turning to the final issue and applying these general guides for review, was the District Court right in granting summary judgment for the Secretary? I think not.

It is not clear from the record whether the Examiner of Inheritance *presumed*

---

2. "Suffice it to say that the courts have rarely, if ever, felt themselves so restrained by technical rules that they could not find some remedy, consistent with the law, for acts, whether done by government or by individual persons, that violated natural justice or were hostile to the fundamental principles devised for the protection of the essential rights of property."

3. 60 Stat. 243 (1946), 5 U.S.C.A. § 1009.

4. Davis, op. cit. supra, § 28.12 at 64.

5. For general discussions, see Davis, op. cit supra; Jaffe, Judicial Review: Question of Fact, 69 Harv.L.Rev. 1020 (1956); Jaffe, Judicial Review: Question of Law, 69 Harv.L.Rev. 239 (1955); Schwartz, Gray vs. Powell and the Scope of Review, 54 Mich.L.Rev. 1 (1955).

the son, Joseph Hayes, to have died exactly seven years after the date of his disappearance or whether he made this finding by weighing all the evidence. More likely he did the former, but whichever he did, his action seems clearly erroneous to me. In other words, if he made a presumption of law, he did so upon an improper interpretation of applicable law. If he made a factual determination, it is not supported by substantial evidence *on the record as a whole.*

Considering his finding first as a presumption of law, we are met at the outset with a difficult problem of conflict of laws. The Oregon Supreme Court has held that in a disappearance case *no* presumption arises as to the *date* of death but only as to the fact of death. Hefford v. Metropolitan Life Ins. Co., 1944, 173 Or. 353, 372, 144 P.2d 695, 702:

> "The weight of authority, both in this country and in England, is that the presumption from seven years' absence *is of death alone* and not of the *time* of death. The presumption of death arises at the *end* of seven years, but by this it is not meant that death is presumed to have occurred at that time, but on some day within the seven year period. According to the leading English case of Nepean v. Doe d. Knight, 2 M. & W. 894, 150 Eng.Rep. 1021 (Ex. 1837), the probabilities are that the death took place a considerable time before expiration of the seven year period. In that case Lord Denman, C. J., said at p. 913 of the report [150 Eng.Rep. at 1029]: 'Now, when nothing is heard of a person for seven years, it is obviously a matter of complete uncertainty at what point of time in those seven years he died; *of all the points of time the last day is the most improbable,* and most inconsistent with the ground of presuming the fact of death. * * *'" (Emphasis added.)

On the other hand, the United States Supreme Court has found it permissible for a tribunal, presumably in a disappearance case (where there is no evidence of any specific peril), to indulge in the presumption that life continued throughout the seven years necessary to raise the presumption of death. United States v. Wildcat, 1917, 244 U.S. 111, 37 S.Ct. 561, 61 L.Ed. 1024; Fidelity Mut. Life Ass'n v. Mettler, 1902, 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922. But see Davie v. Briggs, 1878, 97 U.S. 628, 24 L. Ed. 1086. Thus the English concept adopted by Oregon and the concept enunciated by the Supreme Court are in disagreement.

Section 2 of the 1910 Act authorizes persons

> "having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation or individual Indian moneys or other property held in trust by the United States * * * to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior." 36 Stat. 856 (1910), as amended, 25 U.S.C.A. § 373.

The Secretary has prescribed no regulations which have any bearing on the presumption we are considering. Therefore, in order to find a source for this presumption, we must look outside the federal statute and outside any regulations promulgated thereunder.

There are only two possible sources in this case: general federal law or Oregon law. I think the Examiner was compelled to look to Oregon law. In De Sylva v. Ballentine, 1956, 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415, the Court said:

> "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. [Citations omitted.] This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern."

Here, admittedly we are not dealing with a matter of strictly domestic relations in the narrow sense. The problem is whether a certain fact, i. e., the *time* of death, can be presumed as a matter of law. The Secretary is bound by the General Allotment Act to follow state law in matters concerning descent and distribution. 24 Stat. 389 (1887), as amended, 25 U.S. C.A. § 348. The Secretary argues, however, that the problem here is not one of descent and distribution but one of evidence and that therefore the General Allotment Act is not applicable.

Arenas v. United States, 9 Cir., 1952, 197 F.2d 418, held that the General Allotment Act did not compel the Secretary to follow California law in determining whether a certain adoption was valid. This was dispositive because only if the child was validly adopted would she be entitled to certain Indian property by virtue of intestate succession under Section 1 of the 1910 Act. This result—that the Secretary was not compelled to follow state law—seems contrary to the teaching that where there is a choice between federal and state law in determining the existence of a right (whether or not that right is created by a federal statute) state law should be preferred unless there is some overriding consideration to the contrary.[6] For this reason I would not follow the Arenas case as to this point.

Erie R. R. v. Tompkins, 1938, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, did not merely concern cases brought in United States District Courts under diversity jurisdiction. There, Mr. Justice Brandeis made the sweeping statement: "There is no federal general common law." 304 U.S. at page 78, 58 S.Ct. at page 822.[7] Justice Brandeis' famous dictum really means, it seems to me, that state law should control unless there is some compelling reason to the contrary. Among other things the need for administrative uniformity over the whole country might well be such a "compelling reason," but no policy of national uniformity can be achieved here because the Secretary is required by the General Allotment Act to follow state laws of descent and distribution. It cannot therefore be maintained that regulation of Indian affairs is strictly a matter of federal rather than of state concern: Congress has spoken to the contrary. I believe that the Secretary should be required to follow state law concerning the presumption which, in this instance, controls descent and distribution and thus has the effect of substantive law.

If we apply the law of Oregon, then, the presumption as to the time of death made by the Examiner of Inheritance was clearly erroneous. No reasonable interpretation of Oregon law can support the presumption because the Supreme Court of Oregon held flatly to the contrary in Hefford v. Metropolitan Life Ins. Co., supra.[8] It follows that, if the Examiner's decision is to be read as being based on a presumption, the District Court should have set it aside even though the scope of review is limited to setting aside only those legal determinations which are unreasonable.

Turning now to the other possible interpretation of the Examiner's orders, I do not believe that his finding has any substantial basis in the evidence. Since the majority did not decide this point, no purpose would be served by reviewing

6. Compare Bank of America Nat. Trust & Savings Ass'n v. Parnell, 1956, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93, with Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 63 S.Ct. 573, 87 L. Ed. 838; see De Sylva v. Ballentine, supra; R.F.C. v. Beaver County, 1946, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172.

7. See Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797 (1957); Bunn, Jurisdiction and Practice of the Courts of the United States, ch. 11 (1949).

8. The earlier case of Fink v. Prudential Ins. Co., 1939, 162 Or. 37, 90 P.2d 762, is not to the contrary because, under the circumstances of that case, the Court merely refused to indulge in any *presumption of death*. It did not reach the issue of a presumption as to the time of death.

the evidence here. Suffice it to say that careful scrutiny of the entire record satisfies me that the evidence would not furnish any basis for the Examiner's conclusion.

For the foregoing reasons I would reverse the summary judgment for the Secretary and remand the case to the District Court with directions to vacate the Secretary's order insofar as it relates to the estate of John Thomas and remand the case to the Secretary for further proceedings.