**Earlene Ida Abbott SIMONS, Plaintiff,**

v.

**Stewart L. UDALL, Secretary of the Interior, Duard R. Barnes, Acting Associate Solicitor, Division of Indian Affairs, Stanley Lyman, Superintendent, Fort Peck Indian Agency, David J. McKee, Examiner of Inheritance, Lawson Lee, Finance Office, Bureau of Indian Affairs, Defendants.**

**Civ. No. 2640.**

United States District Court
D. Montana,
Havre-Glasgow Division.

Nov. 22, 1967.

Arthur P. Acher, Helena, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., and Arthur W. Ayers, Jr., Asst. U. S. Atty., Billings, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

This is an action seeking judicial review of the decision of the Secretary of the Interior approving the last will and testament of Amelia Keyes Abbott Viramontes Walker, deceased, mother of the plaintiff in this action, Earlene Ida Abbott Simons.[1]

Defendants have moved for summary judgment. The primary question for determination is whether the decision of the Secretary is subject to judicial review. Plaintiff concedes that, "If the case is not reviewable in this court and the Secretary's decision is final no doubt the case is ended".

The action of the Secretary was taken pursuant to section 2 of the Act of June 25, 1910, 36 Stat. 855, as amended, 25 U.S.C. §§ 372, 373. This Act reads in pertinent part:

"Sec. 1. When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, *and his decision thereon shall*

---

1. If the will were invalid, plaintiff would be entitled to one-third of decedent's estate as an heir at law. She was not in-

cluded as a legatee or devisee under the will.

*be final and conclusive.* If the Secretary of the Interior decides the heir or heirs of such decedent competent to manage their own affairs, he shall issue to such heir or heirs a patent in fee for the allotment of such decedent; if he shall decide one or more of the heirs to be incompetent, he may in his discretion, cause such lands to be sold * * *.

"Sec. 2. Any persons of the age of twenty-one years having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation or individual Indian moneys or other property held in trust by the United States shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent or the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior: Provided, however, That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: Provided further, That the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator, and in case where a will has been approved and it is subsequently discovered that there has been fraud in connection with the execution or procurement of the will the Secretary of the Interior is authorized within one year after the death of the testator to cancel the approval of the will, and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the State wherein the property is located: Provided further, That the approval of the will and the death of

the testator shall not operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, cause the lands to be sold and the money derived therefrom, or so much thereof as may be necessary, used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued to the devisee or devisees, and pay the moneys to the legatee or legatees either in whole or in part from time to time as he may deem advisable, or use it for their benefit: Provided also, That this section and section 372 of this title [section 1 of the Act] shall not apply to the Five Civilized Tribes or the Osage Indians." (Emphasis added.)

Section 1 relating to ascertainment of the legal heirs of the decedent contains the language "and his (the Secretary's) decision thereon shall be final and conclusive". In many cases it has been held that decisions of the Secretary made pursuant to section 1 are not reviewable.[2] There is a conflict in the authorities as to whether the same finality extends to decisions of the Secretary under section 2. In the consideration of these cases, it is important at the outset to recognize the plenary power of Congress over Indians and Indian property. This power was well-summarized in an opinion by Judge Pope in Simmons v. Eagle Seelatsee, E.D.Wash.1965, 244 F.Supp. 808, 813; aff'd without opinion, 384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480.[3] The court said in pertinent part:

"It is well settled that Congress has plenary control over Indian tribal relations and property and that this power continues after the Indians are made citizens. (citing cases) 'After 1871 Congress turned from regulating Indian affairs by treaty to regulation

2. See e. g., Hallowell v. Commons, Hayes v. Seaton, Heffelman v. Udall, all quoted infra; Arenas v. United States, 9 Cir. 1952, 197 F.2d 418, 420, and cases there cited.

3. While recognizing that the Act of June 25, 1910, withdrew from the courts jurisdiction to ascertain the heirs of dead allottees holding under trust patents, the court concluded that it did have authority to determine whether an act relating to the Yakima Indian Nation was constitutional.

by agreement and legislation. The plenary character of this legislative power over various phases of Indian affairs has been recognized on many occasions.' Board of County Com'rs of Creek County v. Seber, 318 U.S. 705, 716, 63 S.Ct. 920, 926, 87 L.Ed. 1094."

" * * * ' "Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government. Lone Wolf v. Hitchcock, 187 U.S. (553) 565. (23 S.Ct. 216, 47 L.Ed. 299)." ' "

A leading case on the effect and purpose of the Act of June 25, 1910, is Hallowell v. Commons, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409, which involved the equitable title of alleged heirs of an Indian allottee dying intestate during the trust period. It was argued that the Act should not apply to pending cases. The language of the Court in answering this contention (although related specifically to section 1 of the Act) is pertinent. The Court said in part:

" * * * This act restored to the Secretary the power that had been taken from him by acts of 1894 [28 Stat. at L. 305, chap. 290] and February 6, 1901, chap. 217, 31 Stat. at L. 760, Comp.Stat.1913, § 4214. McKay v. Kalyton,[4] 204 U.S. 458, 468, 27 Sup. Ct.Rep. 346, 51 L.Ed. 566, 570. It made his jurisdiction exclusive in terms, it made no exception for pending litigation, but purported to be universal, and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States. * * * But, apart from a question that we have passed, whether the plaintiff even attempted to rely upon the statutes giving jurisdiction to the courts in allotment cases, the reference of the matter to the Secretary, unlike the changes with regard to suits upon bonds, takes away no substantive right, but simply changes the tribunal that is to hear the case."

There is some conflict in the few cases which have passed upon the reviewability of decisions of the Secretary under section 2 of the 1910 Act. In the case of Homovich v. Chapman, 1951, 89 U.S.App. D.C. 150, 191 F.2d 761, the court held

---

4. In McKay v. Kalyton, the Court said: "As observed in the Smith case, [Hy-Yu-Tse-Mi-Kin v. Smith] 194 U.S. 408, 24 Sup.Ct. 676, 48 L.Ed. 1039, prior to the passage of the act of 1894, 'the sole authority for settling disputes concerning allotments resided in the Secretary of the Interior.' This being settled, it follows that prior to the act of Congress of 1894, controversies necessarily involving a determination of the title, and, incidentally, of the right to the possession, of Indian allotments while the same were held in trust by the United States, were not primarily cognizable by any court, either state or Federal." 204 U.S. at 468, 27 S.Ct. at 350.

5. In Homovich the court upheld the Secretary's approval of the will, but rejected the Secretary's contention that his decision was not reviewable. No case has been cited in which a court has overruled the decision of the Secretary. Cases cited in Homovich are distinguishable. For example, Blundell v. Wallace, 1925, 267 U.S. 373, 45 S.Ct. 247, 69 L.Ed. 664, involved members of the Five Civi-

lized Tribes, excepted from the 1910 Act. In distinguishing Blanset v. Cardin, 1921, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950, another case cited in Homovich, the Court said: "That case involved the will of a Quapaw woman devising her restricted lands away from her husband. It was held that section 8341 of the Oklahoma laws did not apply because it was in conflict with an act of Congress. But the act there considered was very different from the one now under review. There the authority to dispose of restricted property by will was limited by the provisions of the Act of February 14, 1913, c. 55, 37 Stat. 678, that the will must be 'in accordance with regulations to be prescribed by the Secretary of the Interior,' and that no will 'shall be valid or have any force or effect unless and until it shall have been approved' by that officer. By this language the intent of Congress to exclude the local law and to establish the regulations of the Secretary as alone controlling was made evident; and it was so held." (267 U.S. at 376, 377, 45 S.Ct. at 248).

that review is not precluded by the statute,[5] saying in part:

" * * * We think it plain that, if Congress had meant that the decisions in Section 2 should be final and conclusive, it would have said so; in the immediately preceding paragraph it had so provided when it meant to do so. The mere fact that the acts of the Secretary in providing regulations for the execution of these wills and in approving them, required the exercise of discretion and judgment on his part, does not preclude judicial review of his action. To be sure, if upon such review it appears that his action was within the scope of the authority conferred upon him, the court cannot disturb his decision. But that is a different rule from the rule of total nonreviewability. The Administrative Procedure Act (Section 10) forbids judicial review only where statutes 'preclude' such review or where agency action is 'by law committed to agency discretion.' No statute 'precludes' this review, and the Secretary would have us stretch the second prohibitory clause far beyond its meaning. * * "

In Hayes v. Seaton, 1959, 106 U.S.App. D.C. 126, 270 F.2d 319, the primary question for determination was whether a father or son died first. If the father died first, the property passed to the son under his will. If the son died first, the father inherited his son's property by intestate succession. The court held that the Secretary's determination that the son survived the father was "final and conclusive" under Section 1 of the 1910 Act, and that there was "no basis for * * * reliance on § 2" of the act. In a dissenting opinion, Judge Burger took the position that both Sections 1 and 2 had equal bearing, and that the action of the Secretary was reviewable in view of the holding in Homovich v. Chapman

that "Section 10 of the Administrative Procedure Act governs review of action taken by the Secretary under the authority of Section 2 of the 1910 Act".

In the recent case of Heffelman v. Udall, 1967, 10 Cir., 378 F.2d 109, 112, cert. den. Nov. 7, 1967, 389 U.S. 926, 88 S.Ct. 287, 19 L.Ed.2d 278, the Court of Appeals for the Tenth Circuit declined to follow Homovich v. Chapman. On the contrary, the court said that it would be "illogical and contrary to the whole history of laws governing Indian property" to distinguish between the rights of heirs under section 1 and legatees and devisees under section 2. In that case the will provided that if the deceased remarried, one-third of her estate was to go to her husband. The question determined by the Secretary was whether or not a marriage had taken place.[6] The court said in part:

" * * * Rather, we are urged to hold that the absence or presence of a will is the determinative premise upon which jurisdiction to review the Secretary's finding of a question of fact is dependent. To so hold, we believe, would reduce 'the act of Congress [the Act of June 25, 1910] * * * to impotence by its contradictions.' Blanset v. Cardin, 256 U.S. 319, 325, 41 S.Ct. 519, 522, 65 L.Ed. 950. Certainly, if Louise Wilson had died intestate, the rejection of appellant's claim to heirship and the Secretary's finding would not be subject to judicial review. Henrietta First Moon v. Starling White Tail, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed. 565. While there may be legal distinctions to be drawn between the claim of an heir and the claim of a legatee, it would be illogical and contrary to the whole history of laws governing Indian property to ascribe to Congress by way of a negative inference an intention to provide the Secretary of the

6. The cases of Hayes v. Seaton and Heffelman v. Udall did not involve the approval of a will and on that basis are not precisely in point. They were concerned, however, with a determination of

the rights of heirs, legatees and devisees where the decedent left a will. Section 2 may not be ignored in making this determination.

Interior with unfettered discretion on the one hand but not on the other. We think that as long as an Indian allotment remains subject to the Secretary's control, cf. Hanson v. Hoffman, 10 Cir., 113 F.2d 780,[7] sections 1 and 2 of the Act of 1910 should be viewed as complementing each other with respect to the finality of the administrative determination of facts. We accordingly conclude that such a determination comes within the jurisdictional exception stated in section 10 of the Administrative Procedure Act." 378 F.2d 112.

The reasoning in the Heffelman case is persuasive, particularly in view of the history of the laws governing Indian property. Section 1 of the 1910 Act provides that when an Indian allottee dies before the expiration of the trust period "without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior * * * shall ascertain the legal heirs * * * and his decision thereon shall be final and conclusive". Section 2 then provides that an allottee over 21 years of age may dispose of his property by will "in accordance with regulations to be prescribed by the Secretary of the Interior: Provided, however, That no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior * * * *".

Under both sections the Secretary "in his discretion" is empowered to sell the restricted land and to remove restrictions and issue a fee patent to heirs or devisees. As the court said in Hanson v. Hoffman, supra, "until the administra-tive control of the Secretary over the allotments and the trust property has ceased, the courts are without power to interfere with the performance by the Secretary of his Administrative functions with respect thereto."

Bearing in mind also the plenary control by Congress over Indian property and that the effect of the 1910 Act, as stated by Mr. Justice Holmes in Hallowell v. Commons, supra, was to restore to the Secretary "the power that had been taken from him" by prior acts, it is my conclusion that sections 1 and 2 of the 1910 Act should be construed together and that the decision of the Secretary is not reviewable under either section. This construction is consistent with the apparent intent of Congress to insure marketablility of Indian titles.

This conclusion finds support in the legislative history of the 1910 Act, as indicated by the following excerpt from the proceedings on H.R. 24992:

"MR. FITZGERALD. Mr. Chairman, I want to call the gentlemen's attention there to section 1, where it provides that the determination of the Secretary of the Interior as to who the heirs of any Indian are is conclusive.

"MR. BURKE of South Dakota. I will say to the gentlemen that that is in the law of 1906 and was put in the law of 1908. It was put in there for this purpose. *It was to settle title, so that its finality could never be questioned* for the purpose of affecting its marketability. It simply leaves any aggrieved person who may be left out in the distribution of an estate a claim

---

7. In Hanson v. Hoffman, the court said in part:

"And, so long as the allotments and trust property remained under the administrative control of the Secretary of the Interior, he had exclusive jurisdiction to reconsider and inquire into and set aside the approval of the will. Such right of review is the very essence of administrative authority. (Citing cases). And until the administrative control of the Secretary over the allotments and the trust property has ceased, the courts are without power to interfere with the performance by the Secretary of his administrative functions with respect thereto." (113 F.2d 790).

to go to Congress, instead of assailing the title.

"MR. FITZGERALD. Would it not be better to give some remedy in the court; have a court determine as to who the heirs of any Indian might be?

"MR. BURKE of South Dakota. My observation has caused me to believe that it is not a desirable method of determining titles * * *." 45 Cong.Rec. 5811–12 (May 4, 1910). Emphasis added.

I am not unmindful of the provision of the Administrative Procedure Act, 5 U.S.C. § 702, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review, "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is by law committed to agency discretion". 5 U.S.C. § 701(a) (recodified in Pub.Law 89–554, 80 Stat. 378). It is now well-settled that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress". Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681.

For the reasons hereinabove stated, it is my conclusion that there is "persuasive reason" to believe that it was the purpose of Congress in enacting the Act of June 25, 1910, to deny judicial review to decisions of the Secretary under section 2 as well as section 1 of the Act.

The motion for summary judgment is granted.[8] Defendants will prepare, serve and lodge form of judgment in accordance with this opinion.

8. The question of the reviewability of the decision of the Secretary is solely one of law. There is sufficient doubt on the other grounds of defendants' motion for summary judgment that the motion would be denied if the decision of the Secretary were reviewable. For rules applicable in ruling on motions for summary judgment, see Falls Sand & Gravel Co. v. Western Concrete, Inc., et al., Mont.1967, 270 F. Supp. 495, and cases there cited.