PRINEVILLE SAWMILL COMPANY,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 434–87C.

United States Claims Court.

Jan. 15, 1988.

Gary G. Stevens, Washington, D.C., attorney of record for plaintiff. Alan I. Saltman, Ruth G. Tiger, and Saltman & Stevens, P.C., of counsel.

Katherine A. Day, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and James Perry, Dept. of Agriculture, of counsel.

## OPINION

NAPIER, Judge:

This is a pre-award bid protest action in which plaintiff, Prineville Sawmill Company, Inc., seeks preliminary and permanent injunctive relief against the United States Forest Service related to the South Crater Salvage Timber Sale in Deschutes National Forest, Oregon. Jurisdiction is founded upon 28 U.S.C. § 1491(a)(3).

The matter is now before the Court on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.

Plaintiff filed its complaint on July 20, 1987. Thereafter, an expedited discovery schedule was set by the Court. During the pendency of the action, defendant has neither readvertised the sale nor resolicited bids.

After oral argument and based upon the pleadings, submissions of the parties and testimony obtained in the depositions, and considering the facts in a light most favorable to plaintiff, the Court concludes that defendant is entitled to summary judgment as a matter of law. Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is allowed.

### Facts

On February 27, 1987, the United States Forest Service advertised the South Crater Salvage Timber Sale in *The Bulletin*, in

Bend, Oregon. The sale contained dead and insect-infested timber. One purpose of the sale was to salvage existing dead timber and timber that was expected to die during the 3–year period of the contract. Termination date of the contract was June 30, 1990. The advertisement for the South Crater Salvage Timber Sale stated that the sale consisted of "an estimated 10,450 M Board feet [M board feet means thousand board feet; hereinafter also referred to as "MBF"] of live and dead ponderosa pine, 3,650 M board feet of live and dead lodgepole pine, and 290 M board feet of white fir and others marked or otherwise designated for cutting." The timber was to be sold at oral auction which was to take place on March 31, 1987.

The Forest Service mailed to prospective purchasers, including Prineville, a copy of the sale advertisement together with the short form timber sale prospectus. In addition, required bid forms, a copy of the sample sale contract and related sale materials were made available to prospective purchasers at the Forest Service's offices.

On or about March 12, 1987, the South Crater Salvage Timber Sale was cancelled and a notice of this cancellation together with a statement of the Forest Service's intent to reoffer the sale at a later date was sent to prospective purchasers, including Prineville, by the Forest Service. On April 17, 1987, the Forest Service readvertised the South Crater Salvage Timber Sale and once more sent copies of the advertisement and short form prospectus to Prineville and other prospective purchasers. Again the sample sale contract, required bid forms and related sale materials were made available to prospective purchasers in the Forest Service's offices. The sale was rescheduled for oral auction to take place on May 19, 1987.

At the time the Forest Service mailed copies of the second South Crater Salvage Timber sale advertisement and short form prospectus to prospective purchasers, it also mailed a notice of correction to the short form prospectus notifying plaintiff and other prospective purchasers that the South Crater Salvage Timber Sale would be sold on a scaled basis. This meant that the volume of merchantable timber would be scaled (i.e. measured) for all species of logs as they were removed by the purchaser from the sale and that the purchaser would pay for this timber based upon these scaling results. Consequently, the total amount of money paid by the purchaser to the Forest Service for the timber on this sale could not be finally ascertained until the purchaser had completed the sale.

At all times pertinent to the South Crater Salvage Timber Sale it was established Forest Service practice and policy to direct prospective purchasers to make and rely upon their own estimates of the volume and quality of timber actually offered for sale in timber sales such as the South Crater Salvage Timber Sale.

Prineville and all other bidders were instructed by the Forest Service, in writing, in the short form prospectus, the required bid form and the sample sale contract for the South Crater Salvage Timber Sale as it was advertised both on February 27, and April 17, 1987, to make their own estimates of the volume of timber presently on the sale, as well as an estimate of the volume expected to die as a result of the forest pest epidemic during the contract period, and to submit their bids to the Forest Service only on this basis. The Forest Service stated that its own estimates of the volume of timber available on the sale, as expressed in the advertisement, the sale prospectus, the bid form and sample sale contract, constituted neither guarantees nor limitations of the volumes contained on the sale. Prospective purchasers, including plaintiff, were thus cautioned not to rely upon the Forest Service's estimated volumes in formulating their bids on this sale.

Prineville and all other bidders were instructed by the Forest Service in writing in the advertisement and short form prospectus for this sale that the Forest Service reserved the right to reject any and all bids. The inclusion of such statements in the advertisement was in accordance with the direction in the Code of Federal Regulations which states that a timber sale advertisement shall contain a provision as-

serting the agency's right to reject any and all bids. *See* 36 C.F.R. § 223.83. Prineville acknowledges that it read the advertisement and short form prospectus containing such statements.

Prior to bidding on the sale, plaintiff's timber manager, Timothy Bell, investigated the sale area and reviewed the sale documents including the advertisement, the short form prospectus and the sample timber sale contract available for inspection in the Forest Service offices. On behalf of plaintiff, Mr. Bell took note of the Forest Service's written instructions to bidders to make their own volume estimates and not to rely upon the Forest Service estimates. Prior to submitting its initial bid on the South Crater Salvage Timber Sale, plaintiff retained a professional consultant who prepared an estimate of the volume of timber offered by the Forest Service on the sale. In preparing and submitting its initial sealed qualifying bid on the South Crater Salvage Timber Sale and in bidding at the oral auction on May 19, 1987, plaintiff relied upon its own estimate of the sale volume and the amount of timber that it expected to die during the contract period. Plaintiff did not rely upon Forest Service estimates.

In preparing its bid on the South Crater Salvage Timber Sale and in participating in the oral auction on May 19, 1987, Prineville followed the written directions of the Forest Service contained in the short form prospectus, required bid form and the sample sale contract, which instructed Prineville to make its own estimate of the sale volume and to rely exclusively upon those estimates in bidding on the sale.

There was active competitive bidding on the South Crater Salvage Timber Sale. Three participants in the oral auction, including Prineville, submitted bids substantially in excess of the Forest Service's own fair market value appraisal of the timber on the sale. In accordance with standard Forest Service procedure, the high bid on the South Crater Salvage Sale was determined by multiplying the per MBF rate bid of each purchaser on each species by the Forest Service's estimated volume for that species. The high bidder for the sale was then determined by adding up the total amounts bid by each purchaser for all species. At the oral auction of May 19, 1987, Prineville's final bid was $3,573,375.50, reflecting per MBF bid rates of $161.76 for Ponderosa Pine, $515.00 for Lodgepole Pine and $11.15 for White Fir and other. The second high bidder, DAW Forest Products, bid $3,571,333.50, reflecting per MBF bid rates of $339.00 on Ponderosa Pine, $7.00 on Lodgepole Pine and $11.15 on White Fir and other.

Prineville was subsequently declared the high bidder by the Forest Service by a margin of $2,042.00 over DAW Forest Products. Prineville's May 19, 1987, bid on the South Crater Salvage Timber Sale was responsive within the meaning of all applicable laws and regulations. At the time it submitted its bid on May 19, 1987, and at all times pertinent to the South Crater Salvage Timber Sale, Prineville was, and is today, a responsible bidder within the meaning of all applicable laws and regulations. Prineville has been awarded, and is currently operating, a Forest Service timber sale on the Fort Rock Ranger District of the Deschutes National Forest (the Flow Salvage Sale). In connection with that sale the Forest Service has reviewed Prineville's qualifications and approved Prineville as a responsible bidder.

When the Forest Service designated Prineville as the high bidder, the Forest Service knew that the total amount of money which it would ultimately receive from Prineville would depend upon the actual amount of timber removed from the sale during the 3-year contract period and that Prineville's designated high bid of $3,573,-375.50 did not necessarily represent the actual amount the Forest Service would finally receive. The Forest Service's estimated volumes were utilized in the oral auction of the South Crater Salvage Timber Sale as a mechanical device to simplify the bidding procedure leading to the selection of the high bidder.

On June 4, 1987, the Forest Service confirmed by letter that Prineville was the

high bidder on the South Crater Salvage Timber Sale.

By letter dated July 8, 1987, Donald H. Pederson, the contracting officer for the South Crater Salvage Timber Sale, notified Prineville that notwithstanding Prineville's designation as high bidder, the Forest Service had decided to reject all bids on the sale, including Prineville's, because of alleged errors in the Forest Service volume estimates which were discovered by the Forest Service after its designation of Prineville as the high bidder but prior to award of the sale. Mr. Pederson's letter stated that these errors "so flawed this sale offering that your [Prineville's] apparent high bid was not in fact the high bid."

The overestimation error the Forest Service discovered on the South Crater Salvage Timber Sale amounts to 690 MBF out of a total estimated volume of 14,390 MBF. This is an error of approximately 4.79 percent on the sale as a whole (690 MBF 14,390 MBF = .0479) and an 18.9 percent error based on the Lodgepole Pine alone (690 MBF/3,650 MBF = .189).

Timber "cruising" (estimation of volume of timber) is an inexact process. The Forest Service Timber Cruising Handbook directs that timber cruises should be designed to meet sampling errors of plus or minus 20 percent on the sale as a whole at a 95 percent "confidence level" (95 percent of the time) for all scaled sales with estimated value exceeding $50,000. This directive applied to the South Crater Salvage Timber Sale. The Region 6 Supplement to the Forest Service Manual states that cruises performed on sales of the same type as the South Crater Salvage Timber Sale should be designed to be accurate within plus or minus 10 percent at a 67 percent confidence level for the sale as a whole. This directive also applied to the South Crater Salvage Timber Sale. The overestimation error discovered by the Forest Service on the South Crater Salvage Timber Sale falls within the acceptable guidelines set forth in the Forest Service Washington Office Timber Cruising Handbook and in the Region 6 Supplement to the Forest Service Manual.

Of approximately twenty-seven (27) sales involving scaled units of Lodgepole Pine timber on Deschutes National Forest completed between January 1, 1983, and June 30, 1987, 10 have been involved overestimation or underestimation of timber volume by the Forest Service of magnitudes in excess of 19 percent.

Prineville's tactic of bidding primarily on the lower valued Lodgepole Pine rather than on the higher valued Ponderosa Pine was permitted under applicable law, Forest Service regulations, and Forest Service practice and policy at the time of the bidding on the South Crater Salvage Timber Sale. This bidding tactic was unusual but neither improper nor unknown to the Forest Service representative who conducted the oral auction of the South Crater Salvage Timber Sale. The Forest Service was not authorized to reject Prineville's bid because it was a "skewed bid", i.e., bidding an excessive rate on a lowered valued species the volume of which was believed to be small.

Nevertheless, it was the skewed bidding, although legal, which alerted the Forest Service that the cruise was inaccurate and that there was substantially less Lodgepole Pine than the estimate had indicated. Accordingly, the contracting officer directed his staff to review the cruise and, as had been expected, a large number of arithmetical and transpositional errors were found on the cruise cards. Although other errors were also discovered concerning the form class relied upon to determine which volume tables to use in estimating the volume of timber for sale, these errors, by themselves, did not provide sufficient justification for cancelling this sale. The combination of the errors, however, resulted in a price for Lodgepole Pine which the Forest Service maintains to be unreasonable, and which would lead to a serious loss to the Government if the sale is awarded to Prineville at the current bid price.

If the cruise error had been known at the time of the auction, i.e., if the correct volume for Lodgepole Pine had been used, then plaintiff's apparent high bid would have actually been $348,478 less than the

apparent second high bid, representing 10 percent of the entire sale.

### Discussion

Plaintiff and defendant have fundamentally different views on the requirements of the federal competitive bidding system and the Government's discretion to reject bids.

■ Plaintiff argues that once bids have been publicly disclosed, the Government does not have unqualified discretion to reject bids.

Citing the following holding in *Massman Construction Co. v. United States*, 102 Ct.Cl. 699, 60 F.Supp. 635, *cert. denied*, 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed.2d 1985 (1945), plaintiff argues that bids can be rejected only on the basis of a cogent or compelling reason:

> The Government is required by law to award certain of its contracts on the basis of competitive bids, after advertisement. To make the system work without undue delays and without the opening of the bids being used unfairly to obtain a disclosure of what competitors are offering, it is necessary that the bids be firm bids, backed by a guaranteed willingness to sign a contract at the bid price. To have a set of bids discarded after they are opened and each bidder has learned his competitor's price is a serious matter, and it should not be permitted except for cogent reasons.

102 Ct.Cl. at 718, 60 F.Supp. at 643.

*Massman* imposes a cogent or compelling reason requirement upon the Government's ability to reject all bids after bids have been opened and publicly disclosed and is firmly established in the law as controlling precedent which this Court is bound to apply. Nevertheless, defendant takes the position that there exists an exception to the *Massman* rule, and argues that there are no limitations on the right of the United States Forest Service to reject all bids.

The United States, acting through the United States Forest Service, sells timber from the National Forest Lands System lands under the authority of 16 U.S.C. § 472a. The relevant provision of that statute gives the Secretary of Agriculture the power to implement rules and regulations to govern such sales. Pursuant to that authority, the Secretary has promulgated regulations defining the nature and breadth of the discretion delegated to the Forest Service in the sale of timber.

These regulations, found at 36 C.F.R. Part 223, provide as follows:

223.100  Award to highest bidder.

Advertised timber will be awarded to the highest bidder upon satisfactory showing by him of ability to meet financial requirements and other conditions of the sale offer unless:

(a) Determination is made to reject all bids.

\*      \*      \*      \*      \*      \*

223.101  Procedures when sale is not awarded to highest bidder.

If the highest bid is not accepted and the sale is still deemed desirable, all bids may be rejected and the timber readvertised.

Relying upon this authority, defendant argues that the Forest Service, because of the special nature of the timber industry and Government needs, is afforded complete discretion in carrying out Government timber sales, and can reject all bids with or without reason. *See S & S Logging Co. v. Barker*, 366 F.2d 617 (9th Cir.1966).

The United States Court of Appeals for the Ninth Circuit, in *Hi–Ridge Lumber Co. v. United States*, 443 F.2d 452 (9th Cir. 1971), has explained the rationale for allowing the Forest Service complete discretion in rejecting bids, and the need for the courts to be particularly careful in reviewing action taken pursuant to that authority:

> [W]e have no standards before us by which we could review the rejection of all bids. The development of such criteria and factors to be weighed would be too onerous a burden upon this or any court. Secondly, the decision whether to award a specific contract in view of the government's need for revenue, management of timber and its road-building needs, is one

which is necessarily based upon some expertise in the financial and ecological management of our natural resources. This Court has neither the technical expertise nor the intuitive knowledge gained from daily acquaintance with this subject to provide an informed review of executive decision-making. Thirdly, the timber sale activities of the Forest Service are in the nature of a continuing and comprehensive managerial function. The decision in question reflects managerial policies which may be important to the overall program of the agency.

443 F.2d at 455.

All South Crater Timber Sale bidders were informed of the right of the Forest Service to reject any and all bids by statements which appeared in the advertisement and short form bid. They were contained in and formed a part of the bid solicitation. They manifested the parties' understanding and agreement as to their corresponding rights and obligations under the implied contract to fairly consider bids. Thus, plaintiff knew from the very outset that there existed a clear possibility that the bids would be rejected and the sale cancelled. It therefore assumed the risk that the bids might be rejected and its claim that it will suffer extreme hardship and irreparable harm if not awarded the sale is not substantiated.

The Federal Circuit has not spoken on the issue of an exception to *Massman* for the United States Forest Service. The Ninth Circuit, however, which encompasses the great portion of our nation's timberlands, has applied a standard which amounts to an exception to the *Massman* rule. This Court finds the ruling in *S & S Logging*, 366 F.2d 617 (9th Cir.), to be persuasive authority for upholding the Forest Service's rejection of the bids in the instant suit.

*S & S Logging* was an antitrust case. In that case the Ninth Circuit held that where the national forest supervisor and timber staff assistant rejected all bids at the first timber sale and arranged for another sale of the same timber, their acts were clearly within the scope of their duties and they were immune from suit for damages which alleged that they had conspired with others to monopolize control sale of national forest timber in violation of the Sherman Act. The Forest Service had mistakenly required that minor species be subject to bidding, instead of offering it at a fixed rate. When the Forest Service rejected all bids on this basis, the high bidder brought suit. The Court of Appeals for the Ninth Circuit upheld the Forest Service's decision holding that "under the regulations there is no limitation on the unqualified discretion of the Forest Service to reject all bids with or without reason * * *." *S & S Logging*, 366 F.2d at 624. Thus, "it is plain that the agency action taken here was one committed to agency discretion * * *." *Id.* n. 6.

Plaintiff makes an additional argument that the National Forest Management Act of 1976, the statute under which the South Crater Salvage Timber Sale was sold, requires the Secretary of Agriculture to use bidding methods which "insure open and fair competition." 16 U.S.C. § 472a(e)(1)(A). Plaintiff reasons that resolicitation after bid prices have been disclosed tends to discourage competition and prejudices the position of the high bidder whose bid and strategy have been publicly disclosed. Thus, plaintiff argues that the Forest Service cannot reject all bids following an oral auction simply because it believes the second auction would bring a higher price to the Government. Asserting the *Massman* rationale, plaintiff urges that a compelling reason requirement should apply to Forest Service timber sales even where the right to reject all bids was specifically reserved by Forest Service regulations and in instructions to bidders.

*Massman*, however, is distinguishable. *Massman* adopts the rationale that "[t]o have a set of bids discarded after they are opened and each bidder has learned his competitors price is a serious matter, and it should not be permitted except for cogent reasons." 60 F.Supp. at 643. The instant case is clearly not a sealed bid case, where bidding strategy can be detected by bidders in a second auction. Rather, the instant sale was conducted at oral auction. Sealed

bids were required only in the qualifying round, not in the bidding when the sale was to be awarded.

The compelling reason test is not a statutory requirement but a standard found in the Federal Acquisition Regulations, which are not applicable to timber sale contracts. These procurement regulations specifically require that "after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation." 48 C.F.R. § 14.404–1(a)(1) (1986) (previously codified in the Federal Procurement Regulations at § 1–2.404–1). Thus, it is clear that the discretion of procurement officials who are acquiring goods or services is, by regulation, different and more circumscribed than that of Forest Service timber sale officials under 36 C.F.R. § 223.100(a), which does not require a "compelling reason to reject all bids."

In cases involving sealed bids, the interest of the apparent high bidder in preventing the disclosure of his bids to his competitors is greater than preventing disclosure at oral auction and, for this reason, the regulations limit the contracting officer's authority to reject sealed bids. At an oral auction, each bidder has openly competed, knows his competitor's position, and can change his position based upon that information, thereby eliminating the opportunity for suffering severe disadvantage at the hands of his competitor.

Having determined that the decision to reject all bids and resolicit is a matter within the discretion of the U.S. Forest Service, this decision should not be disturbed in the absence of clear proof of abuse of discretion. In a letter to the Secretary of the Air Force, the Comptroller General has stated that such a determination must not be arbitrary or capricious or be the result of favoritism or a complete disregard of the law or facts. *To the Secretary of the Air Force*, B–140175, November 25, 1959, 39 Comp.Gen. 396. ("We frequently have held that in the matter of Government procurement contracting officers are vested with a certain amount of

discretion and, in the absence of a showing of arbitrary or capricious action, favoritism or a complete disregard of the law or facts, we would not be warranted in holding that their procurement actions were illegal.") *Id.* at 399.

■ Criteria for determining whether the Government acted arbitrarily or capriciously with respect to the bidder-claimant have been set forth in *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200 (1974).

> One is that subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal, normally warrants recovery of bid preparation costs. *Heyer Products Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956). A second is that proof that there was "no reasonable basis" for the administrative decision will also suffice, at least in many situations. *Continental Business Enterprises v. United States*, 196 Ct.Cl. 627–637–38, 452 F.2d 1016, 1021 (1971). The third is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations. *Continental Business Enterprises v. United States, supra*, 196 Ct.Cl. at 637, 452 F.2d at 1021; *Keco Industries, Inc. v. United States, supra*, 192 Ct.Cl. [773] at 784, 428 F.2d [1233] at 1240 [1970]. The fourth is that proven violation of pertinent statutes or regulations can, but need not necessarily, be a ground for recovery. *Cf. Keco Industries I, supra*, 192 Ct.Cl. at 784, 428 F.2d at 1240. The application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor.

203 Ct.Cl. at 574, 492 F.2d at 1203–04.

When these criteria are applied to the facts of this case, plaintiff cannot prevail. It has not succeeded in establishing by clear and convincing proof, that the Forest

Service rejection of bids lacked any rational basis. *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166 (D.C.Cir.1973); *Baird Corp. v. United States,* 1 Cl.Ct. 662 (1983). A procuring agency's technical judgments on such matters should be given great deference, *id.,* and "the court should stay its hand even though it might, as an original proposition, have reached a different conclusion * * *." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971).

In this case, Contracting Officer Pederson rejected the bids because the cruise estimates set forth in the invitation, and upon which the Forest Service intended to base its contract award, were unreasonably inaccurate. As a result of incorrect tallying in the preparation of cruise cards, "a blatant error on the [sample] cruise" was committed. When the errors found in this sample cruise were expanded, the difference was an estimated 690,000 board feet, with an estimated value of $350,000. In order that he might afford prospective bidders the best possible estimates for the volume of timber and obtain the best possible price for the United States for that timber, the contracting officer rejected the bids and sought to readvertise and resolicit bids. He sought to properly exercise his discretion in this instance to ensure that the competition was fair and also to ensure that the United States received not less than a fair price for this public resource, as required by 36 C.F.R. § 223.88(a) (1986). *See Southwest Forest Industries,* B–223646, September 24, 1986, 86–2 C.P.D. ¶ 343 (holding, with no mention of the "compelling reason" standard, that the Forest Service properly rejected all bids on a timber sale). Otherwise, plaintiff would recognize a significant windfall at the expense of the public interest, and the bidding process should not be used, intentionally or unintentionally, to provide the basis for a windfall.

Further, while Prineville alleges bad faith on the part of the Forest Service, it has failed to put forth any cogent statement of facts to suggest, much less establish by "well nigh irrefragable proof," any such invidious or capricious treatment by the Forest Service toward it. *Kalvar v.*

*United States,* 211 Ct.Cl. 192, 543 F.2d 1298 (1976); *see Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed. Cir.1986). At most, the facts establish that errors were made in the past in the methodology of estimating timber volume, but that the contracting officer, in the exercise of his discretion, nevertheless, awarded the sale. The Forest Service does not dispute that cruising is plainly more in the nature of an educated guess than a science, *Caffall Bros. Forest Products v. United States,* 230 Ct.Cl. 517, 678 F.2d 1071 (1982), and that underruns and overruns are frequent. However, such errors concerning the different methods of measuring or estimating log diameters, and bucking logs to lengths differing from the lengths assumed in the cruise, which result in scale volumes differing from estimated cruise volume, are completely different from errors based upon mathematical errors. As the deposition testimony of the contracting officer makes clear, in this case, there were clear mathematical errors in the cruise resulting from incorrect tallying. These tallying errors were precisely the reason for which a resolicitation was called.

### Conclusion

Summary judgment is appropriate where there are no disputed issues of material facts and the moving party is entitled to judgment as a matter of law. Accordingly, while viewing the facts in a light most favorable to plaintiff, defendant is entitled to summary judgment as a matter of law.

Plaintiff's motion for summary judgment is therefore denied. Defendant's cross-motion for summary judgment is allowed. The Clerk shall enter judgment accordingly. No costs.