**ARTHUR FORMAN ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Affiliated Textile, Inc., Defendant Intervenor.**

No. 91–978C.

United States Claims Court.

April 12, 1991.

Marc Lamer, Philadelphia, Pa., for plaintiff.

Brad Fagg, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen, and Cynthia Emerson, Defense Reutilization and Marketing Service, Memphis Tenn., of counsel, for defendant. David Lambert, Washington, D.C., for defendant intervenor.

## OPINION

ROBINSON, Judge:

This proceeding is a pre-award bid protest action in which plaintiff, Arthur Forman Enterprises, Ltd. (Forman), seeks preliminary and permanent injunctive relief against the Defense Reutilization and Marketing Service (DRMS), a sales agency of the Defense Logistics Agency (DLA), related to the cancellation of Invitation for Sealed Bids (IFB) 31–1107, and resolicitation for sale of the same items under IFB 31–1147.

This matter is now before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Although Affiliated Textiles, Inc. (Affiliated), the prospective awardee under IFB 31–1147 has intervened in this proceeding, its only action in support of defendant's motion for summary judgment was to appear during the April 4, 1991 oral argument.

Plaintiff filed its complaint on March 5, 1991. During the pendency of this action, defendant has agreed not to make an award under IFB 31–1147 until April 12, 1991.

After oral argument and based upon the pleadings, submissions of the parties and testimony obtained in the depositions, the court concludes that plaintiff is entitled to summary judgment as a matter of law. Defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is allowed.

*Factual Background*

In January 1991, the DRMS issued IFB 31–1107. This IFB offered for sale approximately 900,000 pounds of textile fabrics and clothing articles stored in warehouses in Caguas and Las Piedras, Puerto Rico.[1] The description of these materials in IFB 31–1107 was as follows:

TEXTILE FABRICS AND CLOTHING ARTICLES: Including butyl cloth (approximately 102,892 yards), Nyco twill cloth (approximately 94,163 yards), charcoal laminated cloth (approximately 378,328 yards), labels, straps, buckles, thread, elastic cord, zippers, hook fasteners, also includes packing materials such as desiccants, labels, partitions, boxes, polybags, tape, and pallets. This material does not meet military specifications and the shelf life has expired on the charcoal laminated cloth and cannot be used for a Government Contract. The above quantities are estimated only. Includes some cut pieces of cloth.

Inside—Warehouse—At Caguas and Lapradera—Loose and Unpacked—In Boxes—Unused—Fair to Poor Condition

Total Cost $5,000,000

Est Total Wt 900,000 lbs 1 LOT

The IFB did not set a minimum bid for these materials. Bid opening for IFB 31–1107 was at 2:00 p.m., February 14, 1991.

The Conditions of Sale—Sealed Bid set out on page 4 of IFB 31–1107 stated that:

The General Information and Instructions and General and Special Conditions of Sale are hereby incorporated by reference and become a part of this Invitation for Bids and any contract resulting from acceptance of bid submitted pursuant to this Invitation for Bids as fully as though such Instructions, Terms and Conditions had been specifically set forth herein.... The specification Instruc-

tions, Terms and Conditions applicable to this sale are as follow:

DRMS Pamphlet, "Sale by Reference, August 1989" (DRMS Pamphlet):

Part 2: General Sale Terms and Conditions (Part 2).... All Conditions, except Condition 4 apply to all items.

Under Part 2 of the incorporated DRMS Pamphlet, Condition 3 provided that "[t]he Government reserves the right to reject any or all bids...."

On February 14, 1991, IFB 31–1107 bids were opened. The bids were as follows:

| Bidder | Bid Amount |
| --- | --- |
| Marywell, Ltd (Marywell) | $276,000.00 |
| Forman | 250,000.00 |
| FM Industries, Inc. | 144,069.38 |
| Affiliated | 103,000.00 |
| AA Surplus, L.A. | 30,000.00 |
| Gentrex, Corp. (Gentrex) | 10,000.00 |
| John Warren | 1,000.00 |

The high bidder, Marywell, was deemed non-responsive because its bid deposit was made with an American Express Card.[2] On the day of bid opening one of the bidders, Affiliated, whose sealed bid was already in the Government's possession, sought to tender an amended sealed bid which Affiliated alleges, had it been accepted, would have raised its bid from $103,000 to $258,000, $8,000 over plaintiff's bid and $18,000 under Marywell's nonresponsive bid.[3] This tender was rejected by the Government on unspecified grounds. The Sales Contracting Officer (SCO), Carolyn Phillips, stated during her deposition that she did not look at this bid at the bid opening. Trans.Depos. pg. 18. Therefore, the highest bidder was determined to be Forman with a bid of $250,000. Some days after the bid opening, but prior to an award, the SCO was apprised of information received from the Chief, Contracts Division, Defense Contract Management Area Operations—Puerto Rico (DCMAO–PR),

1. The court believes that these materials have now been consolidated in one warehouse.

2. A bid deposit could be made with a VISA or Mastercard credit card. However, no other credit cards were authorized for this purpose.

3. According to Affiliated's counsel's statement during oral argument on April 4, 1991, Affil-

iated had protested the award of IFB 31–1107 to plaintiff on the basis of its rejected amended bid, but agreed to withdraw its protest when it understood from the Government that DRMS intended to cancel IFB 31–1107 and resolicit for the sale of the materials.

Minerva L. Blanco,[4] that unsolicited offers had been received in September 1990 for the bid materials, prior to issue of IFB 31–1107 as follows [5]:

| Offeror | Offered Amount |
|---|---|
| Forman | $600,000 |
| Isratex, Inc. (Isratex) | 437,052 [6] |
| Affiliated | 203,000 |
| Gentex | 25,000 |

Thus, the highest unsolicited offer was for $600,000 from plaintiff. Plaintiff's offer stated that it understood the DPSC was accepting offers for residual materials from Contract DLA100–85–C–0402.[7] It then specifically cited the following materials: butyl cloth (102,892 yards); nyco twill cloth (94,238 yards); and other—trim goods, and stated that it was offering $600,000 for *"the above listed materials."* (Emphasis added.) Isratex's offer stated that it "hereby offered the following for the residual Chemsuit material inventory from Contract DLA100–85–C–0402." It then cited the following materials: butyl cloth—(94,238 yards) at $3.00 per yard; and, nycot outershell (102,892 yards) at $1.50 per yard.[8] It is disputed by the parties whether these two higher offers were

for all or part of the materials. However, the court has determined that on their face, these offers were clearly limited to the materials specifically described therein.[9] A third unsolicited offer from Gentex offered $25,000 for all of the materials, "with the exception of partially completed end item garments and carbon impregnated lining cloth." Both of the parties appear to consider the Gentex offer as an offer for all of the materials. This may have been an oversight on plaintiff's part. The remaining $203,000 offer from Affiliated was for all of the materials.

Based upon these prior unsolicited offers, the non-responsive bid of Marywell for $276,000 and Affiliated's allegation that it would have bid $258,000 had it been allowed to change its bid, the SCO determined that the bids received under IFB 31–1107 were *insufficient*.[10] She stated in her deposition, after prompting from counsel, that she had determined a "reasonable price" to be within the range of the two highest prior unsolicited offers, or no lower than $437,052. Thus, the upper range of a reasonable price in her view was expressly

4. During deposition, the SCO stated that she became aware of these offers from Government sources. Affiliated's counsel, during the April 4, 1991 oral argument indicated that Affiliated had notified the Government of these unsolicited offers. It is not clear from his discussion to whom it provided this information. Trans.Proc. pg 21.

5. There is a dispute between the parties whether the condition and the volume of the materials remained constant since April 1990. Plaintiff alleges that certain packing materials were removed, and that the original inventory listing sent to prospective bidders was withdrawn as incorrect by the government. In fact, a letter sent to Forman by Virginia Stanton, the Plant Clearance Officer, indicated that the listed inventory it provided to Forman was incorrect. No specifics were given in Stanton's letter. The record does not reflect exactly what was incorrect about the inventory listing, but certain adjustments to the inventory listing were made prior to issuance of IFB 31–1107. However, the court has determined that this dispute is not material to the outcome of this proceeding.

6. Through a mathematical error, defendant in its pleadings, and the SCO during her deposition repeatedly cited the lowest acceptable reasonable price as $417,000 and not $437,052.

7. DLA100–85–C–0402 was a contract between an unrelated party, Amertex Enterprises, Ltd. and DLA, which was terminated for default.

8. It appears that Isratex may have confused the amounts of yardage of the nycot [nyco twill cloth] with the butyl cloth. If this is the case then Isratex's bid would have actually been higher than stated by the government as its bid for butyl was $3.00 per yard and for nyco $1.50 per yard. It is also unclear why both high unsolicited offerors, assuming Isratex did mistake its amounts, believed there were 94,238 yards of nyco twill cloth available as opposed to the 94,163 listed in the IFB 31–1107.

9. The court does not consider this to be a material issue in dispute as the parties contentions relate to the legal interpretation of this letter.

10. According to her deposition, the SCO had not, prior to the bid opening, obtained an appraisal of the value of the materials, or made an estimate as to what a sufficient bid for these materials would be. However, she was aware that the Government's original acquisition cost for these materials was approximately $5,000,-000.

stated to be $600,000.[11]

The SCO cancelled IFB 31–1107 in accordance with DRMS Pamphlet, Part 2, Condition 3, cited above.[12] On February 26, 1991, rejection notices were sent to all parties who bid on IFB 31–1107 noting that the high bid was rejected as insufficient and that the materials would be readvertised in a new IFB in the immediate future. On February 27, 1991, Sheldon Farber, Forman's representative, orally stated to Phillips that Forman wished to increase its prior bid by $26,000 to $276,000. Phillips responded that IFB 31–1107 had already been cancelled.

In late February 1991, IFB 31–1147 was issued soliciting bids for the same materials previously offered under IFB 31–1107. Again, no minimum bid price was set out in the solicitation. At the March 6, 1991 bid opening, the highest bidder was Affiliated with a bid of $658,000. Plaintiff was the second highest bidder with a bid of $410,-000. Affiliated's bid was accepted by the Government.[13] On March 5, 1991, before an award to Affiliated could be made, plaintiff filed a complaint in this court alleging that the DRMS' decision to reject all bids was arbitrary and capricious in that defendant lacked a compelling reason to cancel the solicitation. Plaintiff sought a Temporary Restraining Order (TRO) and Preliminary Injunction restraining award of the sale of materials to Affiliated until a determination was made on the merits of plaintiff's complaint. On March 11, 1991, plaintiff filed an amended complaint for Preliminary and Permanent Injunction and Declaratory Relief. Defendant subsequently agreed to refrain from issuing an award under either IFB 31–1147 or IFB 31–1107 through April 12, 1991.[14]

*Arguments*

Defendant, in its motion for summary judgment and orally before this court, argues that is was within its discretion to reject bids submitted under IFB 31–1107 because they were unreasonably low. It contends that the Claims Court standard of review in pre-award Government contract cases seeking to enjoin contract award or cancellation of a solicitation is extremely limited, that "[c]ontracting officers may properly exercise wide discretion in their evaluation of bids and in their application of procurement regulations," *CACI Field Services, Inc. v. United States*, 13 Cl.Ct. 718, 725 (1987), aff'd 854 F.2d 464 (Fed.Cir. 1988), and that "[t]he court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable." *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983).

Defendant alleges that the court must follow the factors set forth in *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200 (1974), in reviewing plaintiff's claim. These include:

(1) The existence of subjective bad faith on the part of the Government officials.

(2) The absence of a reasonable basis for the administrative decision.

(3) The amount of discretionary authority entrusted to the procurement officials by applicable statutes and regulations.

(4) The proven violation of pertinent statutes or regulations.

*Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 574, 492 F.2d 1200, 1203 (1974).

**11.** Presumably, any bid below *or above* this range in her view would have been an "unreasonable" bid.

**12.** Before making her final decision, the SCO testified that she discussed cancelling the solicitation with her legal division, the branch chief and other DRMS officials. The record does not show when these discussions took place or exactly what advice was given to her respecting cancellation.

**13.** It is interesting that Affiliated's $658,000 bid was accepted as a responsible bid by the Government. The SCO had determined that a reasonable bid would be between $437,052 and $600,000 and Affiliated's bid is clearly outside of this range, and thus is "unreasonable."

**14.** This stipulation was subject to plaintiff posting $9,000 bond to cover expenses the Government would incur in extending the lease on the warehouse where the materials are located which was due to expire at the end of March.

Defendant contends that plaintiff must establish these factors by clear and convincing evidence, *Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983), although there is no requirement that each of the factors be present, *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir.1988), and that "in a case in which the Government cancels the solicitation altogether the standard is even higher," *Contract Custom Drapery Service, Inc. v. United States*, 6 Cl.Ct. 811, 818 (1984). Defendant argues that as plaintiff has not alleged that Government officials acted in bad faith or violated any statutes or regulations, and that in light of the discretionary authority vested in the Government, the court to grant its motion for summary judgment need only determine that the Government's decision was reasonable.

Defendant alleges that it was not required to meet the cogent and compelling reasons standard required under *Massman Constr. Co. v. United States*, 102 Ct.Cl. 699, 60 F.Supp. 635 (1945), because that standard was not required by the regulations governing the solicitation here at issue. Defendant contends that 41 C.F.R. § 101–45.000 *et seq.* generally governs the disposition of personal property and that sealed bid sales procedures are contained in 41 C.F.R. § 101–45.304–1(a). Defendant alleges that none of these applicable regulations prohibit or limit the cancellation of sealed bid sales solicitations. Defendant then cites 48 C.F.R. § 14.404–1 and alleges that some solicitations are governed by regulations which contain such a requirement. Defendant also contends that *Prineville* does not require application of the cogent and compelling reasons standard in Government sales contracts.

Defendant further argues that even if the Government needed cogent and compelling reasons to cancel the solicitation that, under *Caddell Constr. Co. v. United States*, 7 Cl.Ct. 236, 241 (1985), that term encompasses unreasonably high bids. Defendant contends that this case is very similar to *Caddell*, even though it concerns a sale rather than a purchase of materials. Defendant alleges that since there is less developed law in the area of Government sales, the court should look to Government procurement and acquisition standards and their interpretation in the courts when reviewing a contracting officer's discretion in sales contracts. Defendant argues that a determination that bid prices were unreasonable can be based upon comparison with prior offers, *Matter of Custom Marine, Inc.*, 81–1 C.P.D. Para 111 (1981), and nonresponsive bids from the same solicitation, *Matter of Colonial Ford Truck Sales, Inc.*, 74–1 C.P.D. 80 (1974). Therefore, defendant argues, it was reasonable for the contracting officer to determine that, in light of the prior offers for the subject property, which defendant alleges had stayed in essentially the same condition as when these offers were made, it was in the best interest of the Government to reject all bids as insufficient, cancel the solicitation, and issue a new IFB.[15]

Additionally, defendant argues that plaintiff's position that plaintiff's and Isratex's prior unsolicited offers, were for different materials is based upon speculation as to Isratex, and for plaintiff's part, is based upon what plaintiff now alleges was its intent at the time it made the offer. Defendant argues that the two highest, unsolicited offers do not indicate that they were conditional upon their ability to "pick and choose among the stored materials, or upon their ability to purchase something less than the full lot of materials at issue." Def.Br., pg 3.

Defendant alleges that *Prineville Sawmill Co. v. United States*, 859 F.2d 905 (Fed.Cir.1988), relied upon by plaintiff,

---

**15.** Defendant alleges that once the decision was made to sell these materials under sealed bid, it would have been inappropriate for the SCO to contact the unsolicited offerors for information on these offers. Therefore, the SCO used the information she had available to evaluate their relevance in determining a reasonable price for the offered materials.

Additionally, defendant contends that under *Vanguard Sec., Inc. v. United States*, 20 Cl.Ct. 90 (1990), the SCO was not required to complete her investigation to justify cancelling the solicitation prior to the bid opening.

does not require a different result, that that case was very fact specific, and that the United States Court of Appeals for the Federal Circuit (Federal Circuit) limited its holding to the circumstances of that case. Defendant contends that in that case the Government encouraged bidders to make their own value estimate of timber the Government was selling. When the plaintiff prepared and submitted its estimate, the Government responded by revising its own estimate and attempting to resolicit for new bidders, in violation of its fundamental fairness obligation to plaintiff.

Defendant next argues that injunctive relief is available only under limited circumstances and that plaintiff must demonstrate (1) that it is likely to prevail upon the merits of its claim; (2) that it will suffer a specific irreparable injury if the injunction does not issue; (3) that the harm to be suffered by it outweighs the harm to the DRMS and third parties if an injunction is granted; and (4) that granting relief serves the public interest. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir. 1983). Defendant contends plaintiff must prove each of these elements by clear and convincing evidence. *Baird Corporation v. United States*, 1 Cl.Ct. 662, 664 (1983).

Defendant contends that the equitable jurisdiction of the court may be invoked only in "extraordinary circumstances." *Kinetic Structures Corp. v. United States*, 6 Cl.Ct. 387, 393 (1984). It cites *Howell Construction, Inc. v. United States*, 12 Cl.Ct. 450, 452 (1987), as holding that "[i]n order to succeed in a request for injunctive relief, a plaintiff must meet a heavy burden of showing that there was no rational basis for the agency's decision" and that "[e]arlier decisions of this court have restated the test to be whether (1) the procurement official's decision had a rational basis or whether (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations."

Defendant alleges that plaintiff has not demonstrated a likelihood of success on the merits in that the SCO reasonably exercised her discretion in cancelling the initial solicitation to seek higher bids. Defendant avers that plaintiff cannot show that the harm to it is greater than that to defendant if an injunction were to be granted, in light of the costs and limited availability of continued storage space for the materials. Finally, defendant argues that plaintiff cannot demonstrate that granting the injunction will benefit the public. In fact, defendant argues that it is contrary to that interest because plaintiff would receive materials at far below their value at public expense.

In reply, plaintiff cites *Massman Constr. Co. v. United States*, 102 Ct.Cl. 699, 60 F.Supp. 635 (1945), for the proposition that the Government must have cogent and compelling reasons to cancel a sealed bid solicitation after all bids have been opened and all competitors' bid strategies and prices are known. It also cited *Spichard Enterprises, Inc.*, 54 Comp.Gen. 145 (1974), which states that the rejection of sealed bids after they have been opened:

[T]ends to discourage competition ... [and] means that bidders have expended power and money in preparation of their bids without the possibility of acceptance ... As a general proposition, it is our view that the cancellation after bids are open is inappropriate when an otherwise proper award under a solicitation would secure the actual needs of the government.

*Spichard Enterprises, Inc.*, 54 Comp. Gen. 145, 147 (1974).

Plaintiff argues that defendant's mere stated desire to obtain a higher price alone is not a cogent and compelling reason to permit defendant to reject all responsive bids after they have been opened. Plaintiff cites *Systematics General Corporation*, B–224991, 87–1 CPD, Para. 190, 1 C.Gen. 100, 379 (1987) which denied a protestor's request for cancellation and resolicitation of bids where that bidder desired to increase its bid. The Comptroller General determined that that alone did not constitute a compelling reason to justify reprocurement.

Plaintiff disputes defendant's argument that it has the discretion to reject all bids

even though no cogent and compelling reason exists for doing so. It argues that defendant bases its position, that it does not have to meet the cogent and compelling reasons standard, on the fact that 41 C.F.R. § 101–45.100 does not discuss the power of the Government to reject bids which fully comply with the terms of the IFB. It also disputes that the Government's reservation of the right to reject any and all bids under the solicitation would give defendant unfettered discretion to reject bids absent a showing of governmental fraud or bad faith. Plaintiff argues that these same arguments advanced by the Government in this case were rejected by the Federal Circuit in *Prineville Sawmill Company v. United States*, 859 F.2d 905 (Fed.Cir.1988). Plaintiff argues that that case relied on *Massman Constr. Co. v. United States*, 102 Ct.Cl. 699, 60 F.Supp. 635 (1945), which held that the Government must have a cogent and compelling reason to reject all bids after bid opening. Plaintiff argues that defendant's attempts to distinguish *Prineville* at best are weak, and that in its holding in *Prineville*, the Federal Circuit did not restrict its adoption of the cogent and compelling standard to the facts in that case.

Plaintiff argues that defendant has failed to adequately explain why the SCO only became aware of the previously unsolicited offers after the bid opening or why defendant did not use these offers, which it had in its possession for several months prior to the initial IFB, to establish a minimum bid in the initial or even the subsequent solicitation. Plaintiff attacks the basis for the SCO's determination of the value of the materials by arguing that she never conducted any investigation of their value prior to bid opening, and that she cancelled the solicitation because she "thought" she could get a better price. Plaintiff alleges that changed circumstances and the requirement that the bidder purchase the lot as a whole made its

earlier offer in excess of any fair valuation of the entire lot of materials.[16] Plaintiff cites *Prineville* again as apposite because that court also considered defendant's arguments that Prineville was not the highest bidder. Plaintiff contends that the *Prineville* court determined that defendant's arguments for cancellation of the sale came "closer to proving" that the real reason was simply to try to get more money for its timber. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 914 (Fed. Cir.1988). Plaintiff argues that this determination suggests that price alone is not a cogent and compelling reason to reject sealed bids.

Plaintiff alleges that *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200 (1974), established the arbitrary and capricious standard as the relevant standard to evaluate a disappointed bidders' right to relief. Plaintiff alleges that that court set forth four criteria, cited above, which can be used to prove arbitrary and capricious conduct. Plaintiff contends there is no requirement that it meet all of these factors. Plaintiff alleges that defendant has violated these criteria in that it lacked a reasonable basis for its administrative decision to deny award of the contract under the original solicitation.

Citing the February 26, 1991 SCO's Findings and Determination, plaintiff alleges that the SCO cancelled the solicitation for "insufficient price." Plaintiff argues that defendant, realizing that this stated justification is not a sufficient reason to reject a bid, is now erroneously trying to equate "insufficient price" with "unreasonable price." Plaintiff argues that defendant is attempting to support its position using cases where courts, in evaluating acquisition contracts as opposed to sales contracts, determined that an unreasonably high price was a justification for the rejection of bids. Plaintiff argues that there is

---

**16.** Plaintiff alleges that as a result of Operation Desert Storm the Government began awarding contracts for tan desert camouflage uniforms (for which some of the materials might be usable) and not the usual green woodland camouflage uniforms and that this change in Government purchasing, as well as the fact that the winning bidder would have to dispose of the charcoal laminate materials using environmentally safe methods, meant that their original bid was in excess of the value of the *entire* lot of materials.

a great distinction between acquisition contracts and sales contracts. It argues that acquisition contracts require an expenditure of public funds, while sales contracts do not. Additionally, plaintiff alleges that under 48 C.F.R. 14.404-1(c)(6), unreasonable price is a specific justification for the rejection of bids and that 48 C.F.R. 14.407-2 requires a contracting officer to make a determination of reasonable price prior to contract award. Plaintiff contends that no such guidance exists in the sales regulatory provisions cited by defendant. Finally, plaintiff argues that defendant has failed to prove that the SCO's finding of insufficient price was actually a finding of unreasonable price. Plaintiff argues that the SCO consistently referred to a finding of insufficient price in memoranda, records of telephone conversations, and in her early deposition testimony. Plaintiff contends that it is only later in the SCO's deposition testimony, with prompting by defendant's counsel, that she finally began to make reference to the reasonableness of price for the materials and that this shows that in rejecting its bid, defendant was merely attempting to get more money for its materials.

Next, plaintiff attacks the basis for the SCO's determination that the bids were insufficient. As concerns her reliance on one bidder's allegation, post-bid, that he intended to increase his bid, plaintiff alleges that in *Systematics General Corporation*, B-224991, 87-1 CPD, Para. 190, 1 C.Gen. 100, 379 (1987), the Comptroller General rejected such an allegation as a basis for cancelling a solicitation. Second, plaintiff contends that while a non-responsive bid may be considered in determining price reasonableness, generally that is used in situations where the apparent winning bidder's price was considerably lower than the non-responsive bid and, in many cases, the Government's own estimate. Plaintiff argues that in the case cited by defendant, *Matter of Colonial Ford Truck Sales, Inc.*, 74-1 C.P.D. 80 (1974), the difference was 13%, which was much lower than that in other cases cited by plaintiff. In that case, however, the lower bid was non-responsive solely because the bidder failed to sign the bid and not because of any failure of the bid to conform to the terms of the solicitation. In the instant case, the difference between plaintiff's bid and the high non-responsive bid was 9.09%. Third, plaintiff argues that defendant's reliance on the prior unsolicited offers is misplaced because the two highest prior offers were for only select items, they did not include the purchase of materials for which costly disposal might be required, and the SCO did not consider that the two low offers of $203,000 and $25,000 did incorporate all of the materials.[17] Plaintiff argues that when plaintiff and Isratex made the prior, high, unsolicited offers they were bidding on select items and they were not bidding for the same items as listed in the solicitation, and, therefore, the SCO could not validly compare these offers to bids made under the solicitation. Plaintiff alleges that the SCO admitted that she failed to make even a minimal examination of these earlier offers. Nor, plaintiff contends, did the SCO consider why all of the organizations who made prior unsolicited offers subsequently submitted lower bids in response to IFB 31-1107.[18]

17. As mentioned previously, plaintiff erred in its reading of Gentex's prior non-solicited offer.

18.

That offer excluded some materials from its offer to purchase.

| | Original Offers | IFB 31-1107 Bids |
|---|---|---|
| AFE | $600,000 | $250,000 |
| Isratex/Marywell * | $437,052 | $276,000 |
| Affiliated Textile | $203,000 | $103,000 |
| Gentex | $ 25,000 | $ 10,000 |

* Plaintiff contends that these organizations are affiliated as they have the same address. However the court will ignore for purposes of comparison the relationship of Marywell's and Isratex's bids since it has not been established that these organizations are part of the same corporate entity.

Plaintiff argues that defendant has failed to prove that it had a cogent and compelling reason to reject Forman as the high bidder under IFB 31–1107, and it alleges that the Government, in effect, turned the sealed bid sale into an impermissible auction. *See Action Manufacturing Company,* No. B–222151, 86–1 CPD Para. 546 (1986).

Finally, plaintiff argues that it has met the standards necessary for injunctive relief. Assuming that the court finds that defendant failed to provide a cogent and compelling reason for rejecting plaintiff's bid, plaintiff has no adequate remedy at law because the only damages available are for its bid preparation costs, *Keco Industries Inc. v. United States,* 192 Ct.Cl. 773, 428 F.2d 1233 (1970), and because that remedy is inadequate. *General Electric Co. v. Seamans,* 340 F.Supp. 636 (D.D.C.1972); *Ainslie Corp. v. Middendorf,* 381 F.Supp. 305 (D.Mass.1974).

## DISCUSSION

Summary judgment is appropriate if there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. RUSCC 56. *Celotex Corp v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is material if it will affect the outcome of the case. *Curtis v. United States,* 144 Ct.Cl. 194, 168 F.Supp. 213 (1959). A movant for summary judgment bears the burden of showing the absence of any genuine issue of material fact. *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1146 (Fed.Cir.1983). In evaluating the merits of a summary judgment motion, this court must view the inferences drawn from the facts "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In resolving the cross-motions, the court cannot weight the evidence and determine the truth of the matter on summary judgment. *Logicon v. United States,* 91–921C, 22 Cl.Ct. 776 (Cl.Ct., filed March 25, (1991).

██ It is clear that a bidder may seek equitable relief in the Claims Court to determine whether the Government has breached its implied contractual obligation to fairly and honestly consider all responsive bids submitted in response to an invitation for bids. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 909 (Fed.Cir. 1988).[19]

19. *Prineville* concerned the Government's decision to reject responsive bids following a combination sealed bid and auction of salvage timber from the South Crater area of the Deschutes National Forest. In that case the Government provided estimates of the amount of timber for sales in its solicitation, cautioning potential bidders not to rely on its estimates but to make their own estimates. Potential bidders were required to provide a sealed bid for various species of timber, with a subsequent oral auction which would determine the high bidder. Determination of the high bidder would be made by multiplying bidders bids per species times the Government's original estimates as to the amounts of each species of timber. Plaintiff in that case made its own estimate of the amount of timber available and determined that the Government had made errors in its estimate. Therefore, during oral auction, plaintiff was able to skew its bid, bidding higher for those types of timber which it knew the Government had over-estimated, and lower for any which had been underestimated. The Government used these bids multiplied by its own timber estimates to determine that plaintiff was the high bidder. Later, alerted by plaintiff's skewed bidding, it performed a new estimate and discovered errors in its prior estimate. It then attempted to reject all of the bids because of these errors. Such rejection would have deprived plaintiff of the benefit of its efforts in determining the actual quantities of timber, and would have disclosed its bidding strategy to its competitors. In Prineville's suit in the Claims Court, Judge Napier entered summary judgment for defendant. *Prineville Sawmill Co. v. United States,* 14 Cl.Ct. 186 (1988). The Federal Circuit reversed this decision holding that the Forest Service's decision was reviewable by the Claims Court, and that the Forest Service abused its discretion in rejecting all bids regarding sales of salvage timber.

Despite defendant's arguments that *Prineville* should be narrowly construed, it is clear that many of the findings in that decision should not solely apply to that decision's particular factual circumstances. Many of that court's findings were not based solely on the National Forest Management Act which required full and open competition, 16 U.S.C. § 472a(e)(1)(A), nor upon the fact that the solicitation incorporated sealed bids and a subsequent auction. This

While the terms included within the IFB reserved the right of the Government to reject any or all bids, that right is limited by defendant's obligation to fairly consider all responsive bids. *Prineville Sawmill Co. v. United States,* 859 F.2d 905 (Fed.Cir. 1988). "[A]lthough the Forest Service has been given discretionary authority to prescribe rules and regulations for the sale of timber ... and has, under the rules it has promulgated, the power to reject bids, ... the Forest Service nonetheless has an obligation to treat fairly [the] responsive bids it receives." *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 909 (Fed.Cir. 1988).[20]

The court adopts the criteria in *Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200 (1974) to determine whether defendant's exercise of discretion in rejecting plaintiff's bid was arbitrary and capricious. It is clear to the court that in this case no governmental official acted in bad faith nor did the SCO violate any relevant statutes or regulations in rejecting plaintiff's bid. Therefore, the remaining issues are the amount of discretion the SCO had to reject plaintiff's bid and whether there was a reasonable basis for that administrative decision.

■ It is clear that the fairness obligation cited above in *Prineville* is independent of the Government's good faith obligation and limits a contracting officer's discretion to the extent that such an officer may not act arbitrarily and capriciously in rejecting responsive bids. Additionally, the court must determine whether other factors may curtail that discretion and what standards govern the contracting offi-

cer's decision in determining whether a responsive bid must be accepted.

The parties have both urged the court, alternately, to disregard or to adopt acquisitions standards in determining the standards that apply to this proceeding. In one instance it was argued that for certain issues this court should borrow from the more fully developed area of law in procurement and acquisitions when determining whether a contracting officer has the discretion to reject responsive bids in a sealed bid sales contract based solely on unreasonable price. 48 C.F.R. § 14.404–1(c)(6). In another argument it was contended that since sales contracts, unlike acquisition contracts, do not contain a requirement under 48 C.F.R. § 14.404–1(a)(1) to meet the cogent and compelling reasons standard to reject responsive bids, that that standard is not applicable to this proceeding. However, if the court is to be guided in its analysis of the issues in this proceeding by law developed in the area of Government acquisitions, where existing Government sales regulations do not adequately address a particular issue, it must do so consistently. It appears from the court's review of 41 C.F.R. § 101–45.304–1(a) that those regulations do not adequately address the issues discussed above. Therefore, the court believes it prudent to carefully consider the law developed on these issues in the area of Government acquisitions.

■ Clearly, under 48 C.F.R. § 14.404–1(c)(6) a contracting officer can reject responsive bids solely on the basis of unreasonable price. In this regard, for sales contracts, it is certainly in the public interest that the Government, in the sale of

court interprets many of the Federal Circuits findings to be generally applicable to Government contracts and accordingly, has cited *Prineville* in its analysis.

**20.** Although the Federal Circuit in *Prineville* discussed the fact that there is a statute which specifically limits the Forest Service's discretion, the Forest Service's obligation to treat its bidders fairly was not dependent upon that statute. This was emphasized later in that decision where the court concluded that:

Based on our interpretation of the power of the Claims Court and of the obligations imposed by the Forest Service Management Act as it presently read, *and the honesty and fairness obligations otherwise owed by the Government,* we conclude that the Forest Service's actions in this case are subject to review and that the Forest Service's power is not limitless. ... (Emphasis added.)
*Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988).

Government property, recoup a reasonable price for goods for which public funds were expended. It is reasonable therefore, that a contracting officer be permitted to reject otherwise responsive bids which do not include a *reasonable* price. Thus, the court agrees that a contracting officer has the discretion to reject a bid based upon unreasonable price alone. It is equally obvious that if the court adopts that standard then it must also adopt 48 C.F.R. § 14.404–1(a) which tempers the discretion implicit in that standard. This is particularly true in light of the relationship of these two regulations:

> (a)(1) Preservation of the integrity of the competitive bid system dictates that after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, *unless there is a compelling reason to reject all bids* and cancel the invitation.
>
> (c) *Invitations may be cancelled* and all bids rejected before award but after bid opening *when, consistent with (a)(1) above*, the agency head determines in writing that—
>
> (6) All otherwise acceptable bids received are at an unreasonable price.
>
> 48 C.F.R. § 14.404–1 Cancellation of invitations after opening.

Additionally, the court must consider *Massman Construction Co. v. United States*, 102 Ct.Cl. 699, 60 F.Supp. 635 (1945), which upheld the requirement of cogent and compelling reasons as the standard of review for the Government's decision to cancel a solicitation after bid opening. The court reasoned that "[t]o have a set of bids discarded after they are opened and each bidder has learned his competitor's price is a serious matter, and it should not be permitted except for cogent reasons." *Massman Construction Co. v. United States*, 102 Ct.Cl. 699, 719, 60 F.Supp. 635, 643 (1945).

■ *Massman* established that the Government must have cogent and compelling reasons to reject responsive bids after

bid opening. That this standard is controlling has been reiterated in subsequent decisions issued by this court. "The Court of Claims decision on point that most accurately delineates the standards for cancellation is still *Massman ...*" *International Graphics, Div. of Moore Business Forms, Inc. v. United States*, 4 Cl.Ct. 186, 195 (1983). Therefore, the court concludes that although defendant has the discretion to reject responsive bids as unreasonable, after bid opening, this discretion is limited by the requirement that the contracting officer have cogent and compelling reasons to reject those bids.[21]

■ With these limitations in mind the court will next explore the final criterion in *Keco*, which is whether there was a reasonable basis for the administrative decision to reject all of the bids.

First, relying on case law interpreting 48 C.F.R. § 14.404–1(c)(6), defendant has argued that the SCO rejected all of the responsive bids under IFB 31–1107 because they were for an "unreasonable" price. Defendant has been very careful in its arguments to equate the SCO's finding of "insufficient price," which she repeatedly used in her memoranda, notes, and until corrected, during her deposition testimony, to a finding of "unreasonable" price: the notice to bidders rejecting their bids and notifying them of an intended resolicitation, indicated that the "high bid was rejected as insufficient;" the February 26, 1991 SCO's Findings and Determination indicated that the bids were rejected as insufficient; in the SCO's memorandum of her telephone conversation with Sheldon Farber (of Forman), she indicated that Farber had called wanting to know why the items were being reoffered and she had responded, "thought we could get a better price;" in the SCO's March 4, 1991 memorandum recording her conversation with Farber and Mr. Snow, Chief Sales Branch, DRMS, while discussing her reasons for cancelling IFB 31–1107, she wrote that "Mr. Snow explained the Government's view of the

---

**21.** Clearly, the cogent and compelling reasons standard in *Massman* continues to be applicable at the least to acquisition contracts, which stan-

dard the court has adopted in this proceeding. *Prineville* certainly did not overrule that holding.

rejection of the bid as being in the best interest of the Government by reoffering the item in anticipation of a higher price— that some item prices are rejected on almost all sales as being insufficient;" and, finally during her deposition, when asked how she determined that Forman's responsive bid should be rejected, the SCO responded "[i]t's my responsibility to consider the best interest of the Government, and I felt that we could get a better price than this." Depos.Trans. pg 13.

The court is not convinced that the SCO believed the IFB 31–1107 bids to be "unreasonable," but that she merely thought she could get a higher price for these goods. That such behavior is impermissible is supported in *Systematics General Corporation*, B–224991, 87–1 CPD, Para. 190, 1 C.Gen. 100, 379 (1987) which denied a protest seeking cancellation and resolicitation, where plaintiff bidder sought to change its bid. *Systematics* held that a lower price would not justify reprocurement. In *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 914 (Fed.Cir.1988), the Federal Circuit touched on this issue when it determined that "[r]ather than proving that *Prineville* was not the highest bidder, the Government's arguments and actions come much closer to 'proving' that its reasons for cancelling the sale was not to ensure that the competition was fair and that the bidders were not prejudiced, but simply to get even more money for its timber."

Clearly, prior to the bid opening, for whatever reasons, the SCO had little or no knowledge of what a "reasonable price" for these materials might be. It was not until some time after bid opening that she was even aware that unsolicited offers for the materials existed. Additionally, in none of her earlier statements, prior to prompting by defendant's counsel during her deposition, did the SCO refer to the responsive bids under IFB 31–1107 as "unreasonable." In fact, some of her own memoranda of discussions clearly indicate the Government's desire to "get more money" for the property, and make absolutely no reference to defendant's argument that these bids were "unreasonable." This conclusion is further supported by the SCO's seemingly cursory review of the prior unsolicited offers upon which she based her determination.

Defendant has argued that the SCO fully considered all four unsolicited offers in determining what constituted a reasonable price for the materials and that Phillips considered each of the offers to be for all of the materials which were subsequently offered in the IFBs. It is clear to the court that in its prior unsolicitated offer, plaintiff was not offering to buy the exact same materials which were included in the solicitation. Clearly, plaintiff's offer was for the purchase of a specific quantity of butyl cloth, nyco twill cloth and miscellaneous trim goods. The offer specifically stated that the offer of $600,000 was for the purchase of "the above-listed material." No mention was made in this letter of an offer for the approximately 378,328 yards of charcoal laminated cloth, which clearly is not a "trim item," nor of the miscellaneous packing materials. Plaintiff's offer stated with specificity the exact items it desired to purchase and the offered price. The court will not extrapolate from the language used in its offer an intent to purchase any other undesignated subsequently offered materials. In fact, Isratex's offer of $437,-052 was similarly limited. It encompassed only specific quantities of the buytl and nyco cloth. No trim goods or other materials were cited in its offer. Finally, even Gentex's offer of $25,000 explicitly excluded the partially completed end item garments and carbon impregnated lining cloth. Clearly, on their face all three of these were limited offers. It is difficult to understand the Government's arguments that these offers were for all, and not just specific quantities, of materials under contract DLA 100–85–C–0402. Only Affiliated offered $203,000 to purchase all of the items stored in the warehouse, specifically mentioning the purchase of butyl cloth and camouflage materials.

Clearly, with the exception of Affiliated's offer, these offers were not for the same materials set forth in the IFB's and therefore were not directly comparable to determine a "reasonable" price for all of the

materials in the IFB. Plaintiff's, Gentex's, and Isratex's offers excluded the purchase of the charcoal laminated cloth which item plaintiff has alleged would require potentially expensive disposal in accordance with environmental safety standards. They also excluded other packing or miscellaneous materials from their offer. Under the circumstances it is very conceivable that the offerors bid only for those items they could use and excluded those items which had little or no value and for which they anticipated they would incur costs in their disposal. This argument is persuasive when viewed with the knowledge that at least two of the three offerors who had limited their offers to purchase,[22] *reduced* their bids when they were required to bid on all of the materials.

From its analysis it appears to the court that the SCO failed to adequately consider the import of the variations in these offers. She made her determination that the two higher offers constituted a reasonable price range for all of the materials based upon a cursory review of the unsolicited offers. Thus, she failed to comprehend the significance of the differences in the offers when compared with the subsequent bids. Therefore, the court considers the SCO's reliance on these earlier offers as a basis to reject otherwise responsive bids as unfounded and unreasonable.

The court will also review Phillip's additional findings which she used to support her finding of unreasonable price. First, there was a nonresponsive bid which was $26,000 higher than plaintiff's and, second, there was Affiliated's contention that it had sought to increase its bid to $258,000, or $8,000 over plaintiff's bid, prior to bid opening. Looking first to the nonresponsive bid, the court concludes that, at most, there is a difference between the $276,000 nonresponsive bid and plaintiff's

responsive $250,000 bid of less than 10 percent. While in *Matter of Colonial Ford Truck Sales, Inc.*, 74–1 C.P.D. 80 (1974) a bid was considered nonresponsive because it was 13% lower than the higher non-responsive bid, the court cannot conclude that that minor difference in bids is sufficient to meet the requirement of cogent and compelling reasons to reject an otherwise responsive bid. The same reasoning would apply to Affiliated's alleged bid of $258,000 which was $8,000 over plaintiff's bid.

Finally, the fact that Affiliated eventually bid $658,000 for these materials is not persuasive and is of questionable relevance to the SCO's cancellation of the first solicitation. Based upon Affiliated's counsel's statements at the April 4, 1991 oral argument concerning certain ex parte communications between Affiliated and the Government,[23] the court can reasonably assume that Affiliated was fully aware that one of the reasons that the bids in IFB 31–1107 were rejected for "insufficient price" was plaintiff's prior unsolicited offer of $600,000 for these materials, and raised its subsequent bid accordingly. Additionally, Affiliated was aware that the Government intended to resolicit bids for the materials, and was also aware of one of the bases for this decision was its protest and the Government's subsequent agreement with Affiliated relating to withdrawal of that protest. Therefore, Affiliated, according to its counsel, had time to identify purchasers for these materials, with an idea of what the Government would consider a reasonable bid in connection with a resolicitation of the sale. This opportunity to identify purchasers for these materials may not have been available during the earlier solicitation. When Affiliated's counsel was asked during the oral argument whether he felt that Affiliated was bidding competi-

22. See footnote 18.

23. According to Affiliated's counsel's testimony, during the April 4, 1991 oral argument, *Affiliated* brought these earlier offers to the attention of the Government. "We filed a protest for that and for some other problems that were associated with it with the General Accounting Office and it was a very strong protest I might

say, and they asked us at that point because we knew, *as a matter of fact, we assisted them in and made them aware of what we had become aware of that there was this $600,000 note and they asked us if we would withdraw our protest, they would resolicit based on the fact that there was more value there than they were aware of.*" (Emphasis added.) Trans.Proc. pg 21.

tively for IFB 31–1147, in light of the disclosure of the bids under IFB 31–1107 he replied "That's correct. But I think that we had some additional information and that was [that] we had developed purchasers for the materials, the completed materials and the other material." Trans.Proc. pg 23 "So it made economic sense to increase the bid to that amount [$658,000]." Trans.Proc. pg 23. Clearly, Affiliated's after the fact bid of $658,000 made with full knowledge of the SCO's basis for her cancellation of the first solicitation provided it with an unfair competitive edge not available to other bidders. The court finds that in these circumstances Affiliated's bid of $658,000 is not credible evidence of the unreasonableness of plaintiff's bid. This basis is not sufficient to sustain the SCO's determination in light of the above findings.[24]

Therefore, the court concludes that defendant has failed to establish that the Government based its rejection of plaintiff's bid on a finding that it was unreasonable, and that there were no cogent and compelling reasons for its decision to reject plaintiff's bid. Therefore, its actions in this regard were arbitrary and capricious.[25]

■ Finally, the court will determine whether plaintiff is entitled to injunctive relief. "A frustrated bidder may obtain injunctive relief if it establishes either that the agency's actions were without a rational or reasonable basis, or that a clear and prejudicial violation of an applicable procurement statute or regulation occurred." *Logicon v. United States*, 22 Cl.Ct. 776 (1991). "The standard for a permanent injunction is a preponderance of the evidence that the challenged action is irrational or unreasonable or violates an applicable procurement regulation." *Logicon v. United States*, 22 Cl.Ct. 776 (1991). Plain-

tiff is not required to prove its entitlement to permanent injunctive relief by clear and convincing evidence. *Logicon v. United States*, 22 Cl.Ct. 776 (1991).

■ To succeed in its claims for injunctive relief plaintiff must meet the standards set forth in *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir. 1983). *See also Washington Metropolitan Area Transit Com. v. Holiday Tours, Inc.*, 559 F.2d 841, 842–83 (D.C.Cir.1977). Plaintiff's proof has met the first requirement in that based upon the above findings it has prevailed on the merits. Plaintiff's proof also meets the second requirement since it has shown that it will suffer irreparable injury if the injunction does not issue because plaintiff's only possible monetary relief otherwise is through an action at law for recovery of its bid preparation costs. *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 287 (1983). Plaintiff's proof meets the third requirement because it has convinced the court that plaintiff's interest in the integrity of the bidding process and its access to the procurement dollar outweigh both the Government's interest in attaining a higher price for the materials and in avoiding excess storage costs, and the third party intervenor's interest in purchasing these materials. Quick action in awarding this contract to plaintiff would avoid increasing already existing storage costs. Finally, this relief is in the public interest in that the "public interest takes the form of both ensuring the integrity of the procurement process and minimizing the costs of federal procurements." *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 288 (1983).

## CONCLUSION

Based on the foregoing defendant's motion for summary judgment is denied.

---

**24.** Additionally, Affiliated's second bid of $658,000 could be premised upon information, which may be erroneous, that not withstanding the notification within the IFB that the material does not meet military specifications and cannot be used on a government contract, that such materials could be recertified and subsequently utilized by the government.

**25.** In addition to its reasoning above, the court is concerned that allowing defendant, without cogent and compelling reasons, to reject otherwise responsive bids would turn a sealed bid into an unauthorized action by impermissibly "disclosing the relative price standing of offers...." *Action Manufacturing Co.*, 86–1 CPD 546 (1986), in potentially repeated attempts to achieve an optimum price.

Plaintiff's motion for summary judgment is granted. Defendant is permanently enjoined from awarding the contract materials under IFB 31–1147. Defendant shall reinstate IFB 31–1107 and award said contract to the highest responsive bidder under that solicitation. Finally, the bond posted on March 12, 1991 is released and Clerk is directed to return said bond to plaintiff's counsel.

The Clerk is directed to enter judgment. No costs.